THE PEOPLE OF THE STATE OF NEW YORK ex rel. WILLIAM
H. D. SWEET, Appellant, *v.* HENRY H. LYMAN, State Com-
missioner of Excise, Respondent.

1. CIVIL SERVICE — CONSTITUTION AND STATUTE — PROBATIONARY
APPOINTMENT. The adoption of the civil service clause of the Constitu-
tion of 1894 (Art. 5, § 9) did not repeal or suspend the existing civil service
statute and rules so as to render a probationary appointment improper or
illegal as a test of merit and fitness.

2. SPECIAL AGENT IN EXCISE DEPARTMENT — CONFIDENTIAL POSITION
— VETERAN. The position of special agent in the excise department,
under the Liquor Tax Law (L. 1896, ch. 112, § 10), is in its nature a
strictly confidential position and therefore is not within the statutory pro-
visions (L. 1896, ch. 821) promoting the appointment and retention of
veterans in the civil service of the state.

3 STATUS OF POSITION NOT AFFECTED BY CIVIL SERVICE CLASSIFICA-
TION. The actual and statutory status of the position of special agent in

the excise department as a confidential position is not affected by the classification of the position as competitive, by the state civil service commission.

*People ex rel. Sweet* v. *Lyman,* 30 App. Div. 135, affirmed.

(Argued October 4, 1898; decided December 6, 1898.)

APPEAL from an order of the Appellate Division of the Supreme Court in the third judicial department, entered March 24, 1898, affirming an order made at Special Term denying the relator's motion for a peremptory writ of mandamus commanding the respondent to reinstate him as special agent in the excise department.

The relator is a citizen of this state and an honorably discharged soldier of the Union army, who served in the late war of the rebellion. He passed a civil service examination for the position of special agent in the excise department, was notified thereof by the civil service board, and that his name was on the eligible list for appointment. Subsequently the state commissioner of excise wrote him as to his name being on the civil service list for appointment as special agent, and made inquiry in the letter as to his past, and afterwards had a personal interview with him. Afterwards, and on September 25, 1896, the commissioner appointed him for the probationary term of three months, and assigned him to certain duties, which he undertook to perform. On the nineteenth of the following December, and a few days before the expiration of the three months, the respondent wrote to the relator stating that his efficiency and capacity for the work during his probationary term of three months had not been found satisfactory, and that in accordance with the terms of his appointment and the civil service rules under which it was made, his term of service would cease on the twenty-third of December.

More than three months after the relator had left such employment, this proceeding was instituted. The petition for the writ alleged his citizenship; that he was an honorably discharged soldier; that he was examined by the civil service board, which certified that he was eligible for appointment; that he was assigned to duty at Ogdensburg, N. Y.; that he

properly rendered the services required in the position; that he received notice from the defendant stating his efficiency and capacity were not satisfactory; that no notice of any charges against him was ever given, and no such charges were made; that he was competent to fill the position, and that the defendant refused to reinstate him. Most of the allegations of the petition were admitted by the defendant's answer, except those relating to the competency of the relator to discharge the duties of the place. It then set up affirmatively that he was incompetent, inefficient, and performed certain improper acts during his service under such probationary appointment.

Upon the writ, petition and return the matter was brought to a hearing before a Special Term, when the relator asked for an alternative writ if the court held that any issue of fact arose upon the return. Upon the hearing the Special Term denied the relator's application for a peremptory writ, and did not award an alternative one. From that determination an appeal was taken to the Appellate Division, where the order of the Special Term was affirmed. That court held that the relator was not removed from the position of special agent within the meaning of the Veteran Acts; that he was properly appointed, but that his appointment was a probationary one for three months, and that as that period had expired, he was not removed from the position to which he was assigned, and, therefore, could not be reinstated under the provisions of chapter 821 of the Laws of 1896.

*Eugene D. Flanigan* for appellant. The defendant's powers in regard to the appointment and removal of veterans from office or employment under the Civil Service Law are purely of a ministerial nature. (*People ex rel.* v. *Common Council,* 78 N. Y. 33; *People ex rel.* v. *Comrs.,* 149 N. Y. 26; *Nuttall* v. *Simis,* 31 App. Div. 503; L. 1883, ch. 354; L. 1896, ch. 112; Cooley on Const. Lim. 52–54; *People ex rel.* v. *Rice,* 135 N. Y. 473; *Ray* v. *Jeffersonville,* 90 Ind. 572; *Grider* v. *Tally,* 77 Ala. 422; Const. art. 5, § 9; *Rogers* v. *Common*

*Council of B.*, 123 N. Y. 175, 186; *Chittenden* v. *Wurster*, 152 N. Y. 345; *Matter of Keymer*, 148 N. Y. 219–226; *Baird* v. *Mayor, etc.*, 96 N. Y. 581; *Rathbone* v. *Wirth*, 150 N. Y. 468.) Relator was holding a position by appointment within the meaning of chapter 821, Laws of 1896, and such position was not of a confidential nature. The classification of this position in the competitive list by the civil service board was proper. (*Chittenden* v. *Wurster*, 152 N. Y. 345, 381; *People ex rel.* v. *Tobey*, 153 N. Y. 381; *People ex rel.* v. *Wright*, 150 N. Y. 444, 449; L. 1883, ch. 354; *Matter of Keymer*, 148 N. Y. 219; *People ex rel.* v. *Roberts*, 148 N. Y. 360; 17 Am. & Eng. Ency. of Law, 248; *Wood* v. *City of Brooklyn*, 14 Barb. 425; *Cowen* v. *Vil. of West Troy*, 43 Barb. 48; *Clarke* v. *City of Rochester*, 28 N. Y. 605; *People ex rel.* v. *Adams*, 133 N. Y. 203, 207; *Arthur* v. *Moller*, 97 U. S. 368; First Annual Report U. S. Civil Service Comrs. 11; *People* v. *Poyllon*, 16 Abb. N. C. 119; *Rogers* v. *Common Council of B.*, 123 N. Y. 173; *People ex rel.* v. *Roberts*, 148 N. Y. 363; *Peck* v. *Belknap*, 130 N. Y. 394–399.) The relator having been appointed as the result of a competitive examination, is entitled to the protection afforded him by chapter 821 of the Laws of 1896, and cannot be removed from the position of special agent until after a hearing upon charges made and notice given, and the action of defendant in removing relator without such notice and hearing is illegal and void. (*Matter of Keymer*, 148 N. Y. 219; *People ex rel.* v. *Morton*, 148 N. Y. 156; *People ex rel.* v. *Bd. of Health*, 153 N. Y. 513, 520; *People ex rel.* v. *Thompson*, 94 N. Y. 451; *People ex rel.* v. *Fire Comrs.*, 72 N. Y. 445; *People ex rel.* v. *French*, 51 Hun, 347; *Chase* v. *Lord*, 77 N. Y. 18; *Matter of Livingston*, 121 N. Y. 104; *Curtin* v. *Barton*, 139 N. Y. 505; *Chittenden* v. *Wurster*, 152 N. Y. 345, 362; L. 1896, ch. 821.) Relator having been appointed to his position as the result of an open competitive examination, is entitled to retention in same until removed in the way and manner prescribed by chapter 821 of the Laws of 1896, and the summary action of defendant was illegal and void.

**372**  People ex rel. Sweet *v.* Lyman.  [Dec.,

Opinion of the Court, per Martin, J.  [Vol. 157.

(*Chittenden* v. *Wurster*, 152 N. Y. 345–357; *Matter of Sweeley*, 12 Misc. Rep. 174; 146 N. Y. 401; *Matter of Keymer*, 148 N. Y. 219, 226; Const. of 1894, art. 5, § 9; *People ex rel.* v. *Morton*, 148 N. Y. 156; *People ex rel.* v. *Bd. of Health*, 153 N. Y. 513, 519.) Relator waived no rights which he had. (*West* v. *Platt*, 127 Mass. 376; *Hammett* v. *Linneman*, 48 N. Y. 399; *Titus* v. *G. F. Ins. Co.*, 81 N. Y. 419; *Hamlin* v. *Sears*, 82 N. Y. 327; *Shapley* v. *Abbott*, 42 N. Y. 443; *Tibble* v. *Anderson*, 63 Ga. 41; *Payne* v. *Burnham*, 62 N. Y. 69.)

*Theodore E. Hancock* for respondent. The civil service laws, and rules and regulations established thereunder, provide for conditional or probationary appointments to the civil service of this state. (L. 1883, ch. 354, § 2; *People ex rel.* v. *Cobb*, 13 App. Div. 59.) The relator's service was a probationary one and he was not permanently appointed. His appointment ceased because he was disqualified, and his conduct and capacity were not satisfactory. (Const. art. 5, § 9.) The relator was never removed from his position. He was never permanently appointed. (L. 1884, ch. 410; L. 1894, ch. 716; L. 1896, ch. 821.) The function performed by the state commissioner of excise, in determining that the appellant's "conduct and capacity" were not satisfactory, was a judicial determination, and involved the exercise of discretion, and such discretion cannot be reviewed by a writ of mandamus. (*People ex rel.* v. *Common Council*, 78 N. Y. 39; *Howland* v. *Eldredge*, 43 N. Y. 457; *People ex rel.* v. *Comrs.*, 149 N. Y. 30; *People ex rel.* v. *Mayor, etc.*, 149 N. Y. 215; *In re Haebler* v. *N. Y. P. Exch.*, 149 N. Y. 414; *People ex rel.* v. *Cromwell*, 102 N. Y. 477; *People ex rel.* v. *Brush*, 146 N. Y. 60.)

Martin, J. At the time of the relator's appointment chapter 354 of the Laws of 1883, as amended, provided for the appointment of commissioners who should constitute the New York civil service commission. It then made it the duty of

1898.]     People ex rel. Sweet *v.* Lyman.     373

N. Y. Rep.]     Opinion of the Court, per Martin, J.

such commission to aid the governor in preparing suitable rules for carrying the statute into effect; declared that such rules should provide for open, competitive examinations for testing the fitness of applicants for positions in the public service; that all the offices, places and employments should be arranged in classes, and that there should be a period of probation before any absolute appointment or employment. When the relator was appointed, one of the rules established by the civil service commission was as follows: " Every original appointment or employment in the civil service shall be for a probationary term of three months, at the end of which time, if the conduct and capacity of the person appointed or employed shall have been found satisfactory, the probationer shall be absolutely appointed or employed, but otherwise his appointment shall cease." It is manifest that the purpose of the statute and rule relating to probationary appointments was to enable the appointing officer to ascertain and correct any error or mistake of himself or of the civil service commission arising from the inefficiency of a candidate certified as eligible where he might prove incompetent to discharge the duties of the place to which he was appointed. It seems to be practically admitted that if the statute of 1883 and the civil service rules established in pursuance of it were in force and valid when the relator's probationary term ended, the determination of the learned Appellate Division was right and should be affirmed unless the question is controlled by the Veterans' Act, which will be subsequently considered.

But it is contended that the provisions of the Constitution of 1894 relating to this subject have suspended or repealed the law and rules existing at the time, so that the defendant had no authority to make a probationary appointment. In other words, the appellant's claim is that, having been appointed by the respondent in pursuance of a certificate of his eligibility furnished by the civil service commission, his appointment could not be limited to any probationary term, and, therefore, he could not be removed except for cause shown after a notice and hearing.

374          People ex rel. Sweet v. Lyman.          [Dec.,

Opinion of the Court, per Martin, J.          [Vol. 157.

Thus, the first point involved in this controversy is whether the amended Constitution repealed or suspended the existing statute and rules of the civil service commission so as to render a probationary appointment improper and illegal. Section 9 of article 5 of the Constitution provides: "Appointments and promotions in the civil service of the state, and of all the civil divisions thereof, including cities and villages, shall be made according to merit and fitness to be ascertained, so far as practicable, by examinations, which, so far as practicable, shall be competitive; provided, however, that honorably discharged soldiers and sailors from the army and navy of the United States in the late civil war, who are citizens and residents of this state, shall be entitled to preference in appointment and promotion, without regard to their standing on any list from which such appointment or promotion may be made. Laws shall be made to provide for the enforcement of this section."

The effect of this provision upon the existing statute and rules of the civil service commission has been several times considered by this court. In *People ex rel. McClelland* v. *Roberts* (148 N.Y. 360, 363) it held that chapter 354 of the Laws of 1883, as amended by chapter 681 of the Laws of 1894, constitutes a general system of statute law applicable to appointments and promotions in every department of the civil service of the state, with such exceptions only as are specified in the statute itself, and that by section 16 of article 1 of the Constitution of 1894, that act was continued in force as the law of the state, subject only to such alterations as the legislature might make. In delivering the opinion in that case Judge O'Brien said : " It is quite clear, also, that the civil service statutes constitute a general system of statute law applicable to appointments and promotions in every department of the civil service of the state, with such exceptions only as are specified in the statute itself." In *Chittenden* v. *Wurster* (152 N. Y. 345, 355) it was held that the statute of 1883 was in force, and provides the necessary machinery for carrying the provisions of the Constitution into effect, and the doctrine of the *McClelland* case

in that respect was re-affirmed. In the *Sweeley Case* (12 Misc. Rep. 174, 181) Judge HERRICK discussed this provision of the Constitution. That case was affirmed by this court without opinion (146 N. Y. 401), and his opinion was especially commended by Judge BARTLETT in the *Keymer Case* (148 N. Y. 219, 224). In that case Judge HERRICK said : "The civil service law of the state, as it was prior to the adoption of the new Constitution, is, with the exception of the acts that have been passed relative to soldiers, in harmony with the Constitution." That principle was adopted by this court in affirming that case. Thus, we have its authority as declared in at least three of its decisions, establishing the proposition that the act of 1883, so far as it affects the question under consideration, is, and has been, in operation and effect since the adoption of the new Constitution, as well as before.

We think this proposition should be sustained upon principle, as well as upon the authority of our former decisions. The declaration of the Constitution is that appointments and promotions shall be made according to merit and fitness. The obvious purpose of this provision was to declare the principle upon which promotions and appointments in the public service should be made, to recognize in that instrument the principle of the existing statutes upon the subject, and to establish merit and fitness as the basis of such appointments and promotions in place of their being made upon partisan or political grounds. (Record Constitutional Convention, vol. 5, p. 2444 ; vol. 6, p. 2552, *et seq.*) It then declares that merit and fitness shall be ascertained by examinations, and also the extent to which they shall be thus determined. The extent to which examinations are to control is declared to be only so far as practicable. This language clearly implies that it is not entirely practicable to fully determine them in that way. It was the purpose of its framers to declare those two principles and leave their application to the direction of the legislature. As was said by the chairman of the committee to which this amendment was referred : " It seemed best to the committee, after very careful and repeated consideration, to leave the application

of the principle (of merit and fitness) to the good sense of
the legislature — the application of it." Thus it is apparent,
not only upon the face of the provision itself, but from the
debates in the constitutional convention, that the framers of
this amendment did not intend to absolutely determine how
the merit and fitness of appointees were to be ascertained and
determined. The Constitution provides that to an extent
those questions are to be determined by an examination, but
it is obvious that it was understood at that time that it would
be impracticable to fully determine the merit and fitness of an
employee or appointee by a mere examination, whether com-
petitive or otherwise. It is to be observed that the provision
of the Constitution is that the merit and fitness of the appli-
cant or appointee shall be ascertained in the manner stated *so
far* as practicable, that is, in part at least, if they can be even
partially ascertained in that manner. The words " so far as
practicable" plainly relate to the degree or extent to which
the examination should control. The provision is not that
the examination shall be the basis of determining merit and
fitness *when* or *where*, or in such cases as it is practicable, but
that in all cases they are to be ascertained by an examination,
only *so far* as practicable. In other words, it does not declare
that the examination shall control in ascertaining merit and
fitness in any or all cases where it is practicable, but that the
qualifications of the candidate shall be ascertained in each
case by an examination to the extent and only so far as it
is practicable, and consequently sufficient to insure the selec-
tion of proper and competent employees. The Constitution
plainly implies that other methods and tests are to be employed
when necessary and calculated to fully ascertain the merit and
fitness of the applicant. If a probationary term or other
method is necessary to enable the appointing officer to fully
or correctly ascertain the merit and fitness of the applicant, the
plain and clear intent of this provision is that it shall be
employed.

Assuming then that the framers of the Constitution con-
templated that other methods might also be employed, surely

it cannot be properly said that the trial of an applicant for a probationary period is not an appropriate method of testing and thus correctly ascertaining his merit and fitness. Besides, it is a reasonable method. Indeed it is the usual one. What good business man would employ an assistant, a clerk, or even a laborer for a period which he could not limit or control without adopting that method of ascertaining his qualifications for the place? There can be but one answer. Therefore, that the method provided by the statute and the rules of the civil service commission is appropriate and well calculated to materially aid an officer or department in determining the merit and fitness of an employee, cannot be successfully denied.

Moreover, when this constitutional provision was adopted, and when it was proposed in the convention, the statute and civil service rules to which we have adverted were in force and were well known to and understood by the framers of that provision. Hence, it is but reasonable to suppose that when it was proposed they had the existing statute and rules in view, and did not intend to supersede or interfere with them. In the words of Judge O'Brien: " It is evident from the language of the new provision of the Constitution and from the debates in the convention which followed its introduction into that body, that it was framed and adopted with reference to existing laws, which were intended to give to it immediate practical operation. So that in adopting the new Constitution, the people, in their original capacity, decreed that, thereafter, all the departments of the government should be brought within the operation of existing laws on the subject of appointments." (148 N. Y. 369.)

While it is true that under the Constitution the merit and fitness of an applicant for appointment in the civil service of the state or its civil divisions are to be ascertained, in part at least, by an examination, competitive or otherwise, except in cases where such an examination would be wholly ineffectual to determine those questions, still, even in cases where an examination may be had, it is to control only so far as merit

and fitness may be ascertained by a mere examination. As the Constitution plainly discloses that other methods were expected to be employed to insure proper appointments in the civil service of the state, doubtless it was the then existing method of probationary trial that was in the minds of its framers.

Again, when we examine the history of the reform in the civil service, we find that the question of its propriety had arisen and been considerably discussed in this country for a considerable time before the year 1871. In the month of March in that year Congress passed the first civil service statute enacted in this country. That statute, however, was short and amounted to but little more than a mere declaration of the principle of civil service reform, with brief and what were regarded as insufficient provisions as to the means of carrying it into effect. It remained in that situation until 1883, when by reason of a continued agitation of the subject, the statute was extended and enlarged so as to include substantially all the provisions of the present law upon the subject. In that year the legislature of the state of New York also passed the act under consideration which is, in all its essential particulars, like the act of Congress. That statute has been in full operation and effect in this state since that time, without amendment except in some minor particulars. Thus, although the act of 1883 was, to an extent, considered as tentative when passed, the experience of thirteen years under its provisions, both in relation to the State and Federal governments, had not, when the State Constitution was amended, seemed to its friends to require any radical or substantial change. Both the Federal and State statutes embodied the principle or method of probationary trials as a means of determining the merit and fitness of candidates. This method had also been employed in the civil service of Great Britain since 1855. The English civil service rules in existence then and since provide that no person shall receive a formal appointment in the civil service until his practical capacity and disposition have been tested by a probationary trial of six months,

at the expiration of which, if not satisfactory, he is to be dropped. Practically the same provision is included in the Federal statute as well as in the statute of this state. It is also included in the civil service rules in the cities of Albany, Brooklyn, Poughkeepsie, Elmira, Rochester, Schenectady, Troy, Yonkers and other cities of the state. Indeed, I have been unable to find any commonwealth or political division where the principle of civil service reform is in force that does not include as a method of determining the qualifications of an appointee, the test of a probationary trial.

The propriety of this method is also particularly recognized by such civil service advocates as Dorman B. Eaton and Silas W. Burt. The former, one of the earliest and most earnest advocates of civil service reform, in substance, says that the period of probation before actual appointment is necessary to exclude an applicant, if any should have passed the competition successfully who are found wanting in practical ability for the work. (Ency. Political Science, vol. 1, 485.) The latter, who for more than thirty-five years has been interested in the reform of the civil service, and under whose direction the first civil service examination in this country was had, in speaking of the subject of probationary trials, says: "This limitation (referring to the selection from the three persons standing highest) reduced the opportunities for favoritism to the lowest point deemed possible, since a restriction to the one person standing highest would annul the officer's discretion and responsibility for the appointment, while the three names gave a discretionary range that has by long trial been approved as sufficient, particularly since it was supplemented by appointment for a probationary period only before a permanent tenure was given. This probation was an essential part of the examination and has in practice shown how satisfactory the antecedent procedure was since the number of those who were dropped from service during or at the end of the probationary period has been so inconsiderable that it may be disregarded." (Report of 1897.) Thus we find not only that the civil service rules of Great Britain, the act of Congress, the

statute of our own State, the civil service rules of the United
States, of the state and of the cities thereof, provide for a
probationary test, but the early and continuous friends and
advocates of civil service reform also concur in regarding the
probationary period as useful and necessary to the proper
administration of the civil service. Therefore, when we con-
sider the laws and civil service rules existing when the consti-
tutional amendment was adopted, the position taken upon this
subject by its friends and advocates, and the guarded language
of limitation employed in the amendment, there would seem
to be no doubt as to the purpose of the amendment, nor that
it was intended to continue the hitherto uniform rule as to
probationary trials.

This is made more clear when we remember that the indi-
viduals and organizations that were urging this amendment
had previously induced the legislature to adopt the statute of
1883 and the statutes amending it, and that they were also
influential in shaping the rules which were adopted by the
civil service commission.

Obviously there are many positions in the civil service
where the merit and fitness of an applicant cannot be ascer-
tained with any certainty by a mere examination under the
rules of the civil service. It seems apparent that what was
intended by this provision of the Constitution was that merit
and fitness should be the basis of appointments of public
officers and employees, and that those qualities should be
ascertained and determined, so far as they could be practicably,
by such an examination, but that other and further methods
should be employed when necessary to secure efficiency of
service. It is manifest that actual trial of an appointee in the
place which he seeks would furnish better means to accurately
determine his fitness and merit than would any mere exami-
nation that could be had. Can it be said that the purpose of
this provision was to prevent a probationary trial to discover
the fitness and merit of an applicant, in view of the language
employed, and of the extent to which probationary terms were
then provided for? It is obvious that in many cases an appli-

cant for a position in the civil service of the state or of a municipality might be entirely qualified so far as his attainments disclosed by a civil service examination were concerned, and still be wholly unfit to occupy the position by reason of indolence, inadaptability to the service, garrulousness, want of character, experience, tact, integrity, or lack of a proper disposition, or the existence of habits which would render him quite unfit to assume the duties of the position and yet not be actually incompetent. This court has held that where the relations between the officer and the appointee are confidential this provision of the Constitution does not apply, but fails by reason of the impracticability of determining merit and fitness for such a position by a civil service examination. (*People ex rel. Crummey* v. *Palmer*, 152 N. Y. 217.) In *Chittenden* v. *Wurster* (152 N. Y. 345, 359), in discussing this question, Judge HAIGHT said : " A candidate may be ever so competent and still lack many of the necessary elements of a trustworthy officer ; he may be ever so learned and still lacking in judgment and discretion ; he may be discreet and still without character ; he may be honest and yet meddlesome and a person in whom you could not confide."

If this provision of the Constitution is absolute, and permanent appointments must be made whenever the civil service board certifies that an applicant is eligible, then, as the Constitution makes no exception as to confidential clerks or employees, no reason exists why it must not be enforced in those cases as well as in any other. It is true the statute in relation to veterans provides that it shall not apply to a private secretary, deputy of any official or department, or to any other person holding a strictly confidential position. That, however, is a mere declaration of the legislature, and if the Constitution of 1894 relates to all appointments and positions in the civil service, and makes the examination by the civil service commission as to merit and fitness the measure which controls, then the Veterans' Act, so far as it relates to confidential appointees, is in conflict with that provision and is invalid.

The manifest purpose of the civil service statutes and of the amended Constitution was to improve the civil service of the state by securing employees of greater merit and fitness. Therefore, it is quite as much within their purpose and provisions that an examination should not control when other and better methods would secure an improved service, as that it should not apply to confidential positions. If it does not apply in one case, it applies only partially in the other. It can with no more propriety be said that an examination is impracticable because a position is confidential, than that it is at least partially impracticable because it will not fully ascertain the merit and fitness of the applicant. In one case the examination is impracticable by reason of the responsibility and confidential character of the position; in the other, by reason of the inefficiency of such an examination to fully and fairly determine the merit and fitness of the contemplated employee. One is impracticable because of the character of the position, and in the other the manner of ascertaining the qualifications of the applicant by examination is impracticable because insufficient. While we have held in regard to the former that those positions are not included in the provision as to examinations because they are not practicable to determine merit and fitness for such places, and, hence, no examination need be had, still, it is to be observed that the Constitution does not say that examinations shall not be made *when* impracticable, but that they shall be made *so far* as practicable to determine merit and fitness; that is, to the extent that they are practicable to accomplish that purpose, they shall be employed.

We think there are two classes of cases where the question of practicability arises; one, where the place is such that no examination can be had because the questions of merit and fitness for the particular place cannot be reached in that way, and the other, where an examination may be had, but different and additional tests will tend to secure an improved service by more accurately determining these questions. If the statute providing a probationary term as one of the

means to determine the merit and fitness of an appointee or employee is in conflict with the Constitution, then the statute which excepts from its operation deputies and confidential employees is also in conflict with it, and the former decision of this court as to persons holding a confidential relation to the person or department appointing them was not justified under the provisions of the Constitution. If the words "so far as practicable" do not apply to a case where the real merit and fitness of an appointee are sought to be determined by other methods which are surer and will more accurately determine those questions, then they have no meaning and cannot be employed to sustain the decision of this court in the *Chittenden* case.

As it is evident that the amendment of the Constitution was not intended to provide that civil service examinations should be the sole means of determining the merit and fitness of applicants, and as it expressly declared that laws should be made by the legislature to provide for its enforcement, and in view of the fact that this court has already decided that the statutes which were in existence when the Constitution was adopted are still in force, and are the laws of this state relating to the subject, we think it cannot be properly held that the statute which then provided for a probationary appointment as one of the means of ascertaining the merit and fitness of applicants, is in conflict with that provision of the Constitution.

But it is said that if this construction of the Constitution shall obtain, its provisions may be violated by unscrupulous and dishonest officers. That may be. There are few statutes or constitutional provisions that may not be thus violated. But in construing the language of the Constitution, distrust of public officers, or fear that they may not discharge their full duties, should not be assumed or entertained and made a basis for holding the statute of 1883 in conflict with it. In construing this amendment, this court should not assume that public officers will not perform their duty or will fail to discharge the responsibilities imposed upon them by law in an

honest and proper manner. "It must be assumed that the legislature, and all other public bodies intrusted with the functions of government, general or local, will use the power conferred by the Constitution or the law fairly and in the public interests." (*Clark* v. *State*, 142 N. Y. 101, 105.) Nor is it to be assumed that the framers of the Constitution had any such idea in view when it was proposed and adopted. If it had been the purpose of the framers of this provision to prevent the legislature from requiring other and existing means of determining the merit and fitness of appointees or employees in the public service, they would not have employed language limiting the extent and effect of such examination to practicability in ascertaining and determining them, but would have made the examination absolute and controlling. So, too, if they had intended to limit the matter of practicability to particular positions or places, they would have employed language expressing that idea, such as "in such cases as it is practicable," or some other equally apt term. Instead of employing any such expression, they have used one which shows plainly that the limitation of practicability was intended to be one of extent, and applicable to all cases alike.

By these considerations we are led to the conclusion that the law of 1883, providing for a probationary term in which to test the merit and fitness of an applicant for a position in the civil service of the state or the various municipalities thereof, is not in conflict with the provisions of section 9 of article 5 of the Constitution. Therefore, that statute being valid and in force at the time of the relator's appointment, it is obvious that his services for the state were properly terminated so far as the civil service laws and regulations are involved.

This brings us to the consideration of the question whether the rights of the relator are controlled by the Veterans' Act (Ch. 821, L. 1896). It is contended that, independently of the Civil Service Law and by virtue of that act, a veteran has an absolute right to be preferred and appointed to any appointive position he seeks, unless the officer or department having the power of appointment shall show affirmatively, upon a hear-

ing after notice upon charges made, that he is incompetent, or has been guilty of some act or misconduct which renders him unfit for the place, and the burden of proof is upon the officer or department to establish such incompetency or misconduct.

The Veterans' Act, however, declares that its provisions shall not be construed so as to apply to any person holding a confidential position. So that if the position of special agent was confidential, then chapter 821 has no application in this case, although it may have force in others. Section ten of the Liquor Tax Law (Ch. 112, L. 1896) permits the state commissioner of excise to appoint not more than sixty special agents at an annual salary of twelve hundred dollars, payable monthly, and then declares : " Such special agents shall be deemed the confidential agents of the state commissioner, and shall, under the direction of the commissioner and as required by him, investigate all matters relating to the collection of liquor taxes and penalties under this act, and in relation to the compliance with law by persons engaged in the traffic in liquors." Then follows a detailed statement of the duties of such special agents, which shows quite clearly that they are of an important and confidential character. The position of such an agent is one in which he represents the commissioner in a manner and to an extent which may well be regarded as strictly confidential. Thus we find that the same legislature, which excepted from the operation of the Veterans' Act any person holding a strictly confidential position, declared the position held by the relator to be confidential.

That the position of special agent is confidential there can be little doubt. This court has had occasion recently to several times consider the question as to what constitutes a confidential position. In *Matter of Ostrander* (12 Misc. Rep. 476) it was held that the position of deputy superintendent of public buildings was a confidential one, and, therefore, fell within the exception to the Veterans' Act, which gave preference in appointment to honorably discharged soldiers, sailors and marines. That case was affirmed by this court on the opinion of the court below. (146 N. Y. 404.)

In *People ex rel. Crummey* v. *Palmer* (152 N. Y. 217,
220) this court again considered the meaning of the word
"confidential," as used in a similar statute, and it was there
said : " The statute which we have under consideration has
reference to officials, and the confidential relations mentioned
undoubtedly have reference to official acts, and include not
only those that are secret, but those that involve trust and
confidence which are personal to the appointing officer. If,
therefore, the statute casts upon an officer a duty involving
skill or integrity, and a liability either personal or on the part
of the municipality which he represents, and he intrusts the
discharge of this duty to another, their relations become con-
fidential." It was there held that an assistant warrant clerk
in the office of the comptroller of the city of Brooklyn sus-
tained a confidential relation to his superior officer within the
meaning of a statute preventing the removal of soldiers, sail-
ors or members of a volunteer fire department in any city of
the state.

In *Chittenden* v. *Wurster* (Id. 360) this question was also
considered, and, after referring to the *Crummey* case, it was
there said : " We then were of the opinion that where the
duties of the position were not merely clerical, and were such
as were especially devolved upon the head of the office,
which, by reason of his numerous duties, he was compelled to
delegate to others, the performance of which required skill,
judgment, trust and confidence and involved the responsibility
of the officer or the municipality which he represents, the
position should be treated as confidential."

When we read the provisions of section ten of the Liquor
Tax Law, which declare that a special agent shall be deemed
the confidential agent of the state commissioner, and ascertain
the duties he is required to discharge under the immediate
direction of the commissioner, it becomes manifest that they
are of a confidential character. His acts are official acts per-
formed for and in the name of the commissioner, and are
not only secret, but they also involve trust and confidence
which are personal to the appointing officer. The duties cast

1898.]        People ex rel. Sweet *v.* Lyman,            387

N. Y. Rep.]      Opinion of the Court, per Martin, J.

upon the special agent ·involve skill, integrity and liability personal to the officer he represents, and the relations between the excise commissioner and the special agent fall plainly within the principle of the previous decisions of this court upon the subject.   Thus the position to which the relator was appointed was not only declared by statute to be confidential, but its duties were such as to render it clearly so under the doctrine of the cases decided by this court.

It is, however, said that the civil service commission has placed the position of special agent in the list where competitive examinations are required, and, hence, the position cannot be regarded as confidential.   Surely the civil service commission cannot change the actual status of a position by declaring one which is actually confidential not to be so, nor is it vested with power to repeal a valid statute or to practically annul it by declaring a position to be competitive when the law has provided otherwise, and the position is plainly of a strictly confidential character.

I find no significance in the suggestion that the question of the confidential character of the position of special agent was not raised by the excise commissioner in the courts below.   If that were admitted, it would not aid the relator, as it is a universal rule that it is the duty of an appellate court to affirm a judgment which is correct, although the ground assigned for the decision may be untenable.   In other words, the rule requires that a correct judgment should be affirmed, regardless of the correctness of the reasons given for awarding it.   If the act of 1883 is valid and still in force, and the position of special agent is a confidential one, it follows that the judgment was right and should be affirmed.

We are of the opinion that the statute of 1883 and the statutes amendatory thereof are still in force and are not in conflict with the Constitution ; that the position of special agent was a confidential one ; that the relator was not entitled to be appointed to or retained in the position of special agent, and that the Appellate Division properly so held.

The order should be affirmed, with costs.

HAIGHT, J. (dissenting).   William H. D. Sweet, the appellant, is a citizen of this state and is an honorably discharged soldier of the Union army during the late civil war, having served therein as a second lieutenant of the Third regiment of cavalry of New York state volunteers.

In June, 1896, he passed the civil service examination and was placed upon the register of applicants eligible for appointment to the position of special agent under the Liquor Tax Law.   On the 26th day of September thereafter, the defendant appointed him to the position of special agent for a probationary term of three months, upon a salary of $1,200 per annum.   He thereupon entered upon the discharge of the duties of his position and served the term for which he was appointed.   On the 19th day of December, 1896, he received a letter from the defendant notifying him that his efficiency and capacity for the work required as a special agent during his probationary term of three months had not proved satisfactory, and that his employment would cease on the 23d day of December thereafter.   On the 8th day of April, 1897, he petitioned the court for a peremptory writ of mandamus directed to the defendant commanding him to reinstate him to the position of special agent, or for such other and further relief as may be just and proper.   In his petition he alleged that he had the capacity required for the performance of the duties of a special agent, and that he was efficient in the discharge of his duties as such during his probationary term. The defendant opposed his application for the writ upon an affidavit filed by him asserting his inefficiency and incapacity for the discharge of the duty of the position.   Upon the hearing of the motion before the court, the relator asked that an alternative writ issue in order that the question of his capacity and efficiency might be determined by the court. The court refused to issue an alternative writ and denied his motion for a mandamus, and this order was affirmed in the Appellate Division.

Chapter 821 of the Laws of 1896 provides that : " § 1. In every public department and upon all public works of the

state of New York, * * * honorably discharged Union
soldiers, sailors and marines shall be preferred for appoint-
ment, employment and promotion; * * * provided they
possess the business capacity necessary to discharge the duties
of the position involved. And no person holding a position
by appointment or employment in the state of New York
* * * who is an honorably discharged soldier, sailor or
marine, * * * shall be removed from such position or
employment except for incompetency or misconduct shown,
after a hearing upon due notice, upon the charge made, and
with the right to such employee or appointee to a review by
writ of certiorari; a refusal to allow the preference provided
for in this act to any honorably discharged Union soldier,
sailor or marine, or a reduction of his compensation intended
to bring about a resignation, shall be deemed a misdemeanor,
and such honorably discharged soldier, sailor or marine shall
have a right of action therefor in any court of competent
jurisdiction for damages, and also a remedy by mandamus for
righting the wrong. The burden of proving incompetency or
misconduct shall be upon the party alleging the same. But
the provisions of this act shall not be construed to apply to
the position of private secretary or deputy of an official or
department or to any other person holding a strictly confi-
dential position."

It may be that the provisions of this act casting the burden
of proving incompetency upon an officer charged with the
duty of making appointments to the civil service is unwise,
and that the clause making him guilty of a misdemeanor, and
liable personally in damages in case he fails to allow the pref-
erence provided for, is harsh and unreasonable. Possibly these
provisions may operate to deter officers from exercising their
judgment against applicants in considering their business
capacity, and that, in consequence, incompetent persons may
receive appointments to positions in the civil service, thereby
prejudicing the public interests; but as to the wisdom and
effect of these provisions we have nothing to do, and if they
are unwise, harsh and unreasonable the remedy is with the

390      People ex rel. Sweet *v.* Lyman.      [Dec.,

Dissenting opinion, per Haight, J.      [Vol. 157.

legislature. As long as they remain a part of our statutes it is the duty of the courts to faithfully execute them.

The statute, as we understand it, as applied to the case under consideration, casts the burden of showing that the relator did not possess the business capacity necessary to discharge the duties of special agent upon the defendant. He appointed the relator for the probationary term of three months, provided by the statute and the rules promulgated by the governor. The commissioner thus had an opportunity to ascertain his competency and business capacity. At the end of the probationary term the relator, being an honorably discharged Union soldier, was entitled to his permanent appointment, provided he possessed the business capacity necessary to properly discharge the duties of the position. The commissioner, in the first instance, was charged with the duty of determining that question of fact. He found against the relator, but his finding is not conclusive. Under the provisions of the act the relator is given the right to have the correctness of the commissioner's determination ascertained by mandamus. This remedy he invoked, and it appears to us that, upon the papers presented, he was entitled to an alternative writ, to the end that the question raised with reference to his competency and business capacity might be tried and determined by the court in the usual way.

It is now contended that the provisions of the Liquor Tax Law (Chap. 112, sec. 10, Laws of 1896) provide that the special agents "shall be deemed the confidential agents of the state commissioner," and that the provisions of the act which we have above considered do not apply to any "person holding a strictly confidential position." It will be observed that in the Liquor Tax Law the word "strictly" is omitted, but assuming that it was the intention of the legislature to make the position of special agents a strictly confidential position, the question then arises as to whether it is in conflict with the civil service clause of the Constitution, which provides that "appointments and promotions in the civil service of the state  * * *  shall be made according to merit and fitness, to be ascertained,

so far as practicable, by examinations, which, so far as practi-
cable, shall be competitive." In considering these provisions
of the Constitution in the case of *Chittenden* v. *Wurster* (152
N. Y. 345), we held that competitive examinations were not
practicable for positions which were strictly confidential to the
appointing officer, and in that case and in the *Crummey Case*
(152 N. Y. 217) we discussed to some extent the question as to
what constituted a confidential position. Of course, great
weight should be given to the determination of the legislature
as to the character of the position. It, however, cannot over-
ride the Constitution and by an enactment make a position
confidential which, under a fair and reasonable construction
of the Constitution, is not confidential. Whether a position is
confidential or not depends largely upon the character of the
duties of the position. We think, however, that we are
relieved from the consideration of this question at this time
for the reason that the commissioner of excise in this case has
made no claim that the position was confidential or that he
refused to appoint the relator for that reason. In his answer
to the petition for the writ of mandamus he alleged two
grounds, and two only for the opposing of the allowance
of the writ. These grounds were, first, incompetency, and,
second, *laches* in instituting the proceedings. Those were the
only questions brought to the attention of the court and
are the only questions which we think can properly be here
considered.

The order of the Appellate Division and that of the Special
Term should be reversed and an alternative writ issued, and
for that purpose the proceeding should be remitted to the
Special Term, with costs to abide the final award of costs.

BARTLETT, J. (dissenting). I agree with Judge HAIGHT for
reversal but place my vote on the grounds stated in his opinion
and the additional ground based on the civil service provisions
of the Constitution (Art. V, § 9).

The fundamental law commands that appointments and
promotions in the civil service shall be made according to

392          People ex rel. Sweet *v.* Lyman.          [Dec.,

Dissenting opinion, per Bartlett, J.          [Vol. 157.

merit and fitness, to be ascertained, so far as practicable, by examinations, which, so far as practicable, shall be competitive. It then further commands that the honorably discharged soldiers and sailors in the late civil war, who are citizens and residents of this state, shall be entitled to preference in appointment and promotion without regard to their standing on any list from which such appointment or promotion may be made.

In my opinion, when the name of a veteran is duly reached on the eligible list, he is entitled, under the provisions of the Constitution and the law enacted to carry them out, to an absolute appointment, and thereafter can be removed only for incompetency or misconduct. (Ch. 821, Laws 1896.)

The provisions for a probationary appointment of three months (Laws 1883, ch. 354, § 2, and rule 12 of the Civil Service Board) are contrary to the letter and spirit of the Constitution, and consequently void. The rule enacted by legislative authority, and as amended in 1896, provides : " At the end of such term, if the conduct, capacity and fitness of the probationer are satisfactory to the appointing officer, his retention in the service shall be equivalent to his absolute appointment; but if his conduct, capacity and fitness be not satisfactory, he may be discharged at any time."

If this rule and the legislation upon which it is based can stand, it may be well asked what has become of that protection which the Constitution is supposed to afford the veteran after his merit and fitness have been ascertained by a competitive examination and his name entered on the eligible list ?

It comes to this, that he receives his absolute appointment only if his conduct, capacity and fitness are satisfactory to the appointing officer. To my mind, this amounts to a practical repeal of the constitutional provisions to which reference has been made.

If the act of 1883 and the rule framed in pursuance of it stand, the legislature can repeal the act of 1896 and all other acts standing in the way, and appointments will depend upon the whim, the caprice, of an appointing officer if he is disposed to abuse the power with which he is vested.

It is no answer to say that the law presumes an officer will perform his duty properly.

The civil service policy of the state, which was finally placed in the Constitution, seeks to do away with this abuse of power and patronage.

I am not content to rest my vote solely on the act of 1896.

MARTIN, J., reads for affirmance. PARKER, Ch. J., GRAY and VANN, JJ., concur. HAIGHT, J., concurs so far as it relates to the civil service provisions of the Constitution and statutes, but dissents as to the portion relating to the Veterans' Act upon the grounds specified in his opinion.

HAIGHT and BARTLETT, JJ., read for reversal, and O'BRIEN, J., concurs.

Order affirmed, with costs.