In the Matter of BONAVENTURA PINGGERA, Petitioner, against MUNICIPAL CIVIL SERVICE COMMISSION, Respondent.

Supreme Court, Special Term, New York County, May 26, 1953.

*Carl Rachlin* and *Dorothy Grot Voss* for petitioner.

*Denis M. Hurley, Corporation Counsel (Arthur H. Geisler* of counsel), for respondent.

STEUER, J. After some years service as a temporary appointee the petitioner in March, 1951, took an examination for qualification on the permanent civil service list and received a satisfactory rating. On September 6, 1952, he received a permanent rating as washroom attendant. On December 4, 1952, he appeared before respondent civil service commission pursuant to prior notice for inquiry as to fitness. On that inquiry petitioner testified that he had been a member of the Communist party from 1936 to 1939, at which time he had been expelled from that party for criticism of the Hitler-Stalin pact. The commission struck his name from the list and he has lost his position.

There is no doubt that the respondent not only has the right but the duty to inquire into elements of character as well as ability (*People ex rel. Sweet* v. *Lyman,* 157 N. Y. 368). Nor can it be reasonably disputed that loyalty is one of those elements. The question here is whether the evidence before the commission was such as to enable it to make a determination as to that element of petitioner's character. If not, its action would be arbitrary.

The sole evidence was given by petitioner. He testified that in 1936, he was unemployed, having previously been a waiter. He joined the Communist party in the belief that it was working for amelioration of the conditions he was facing. In 1939, he spoke out against the party's association with Hitler and the invasion of Poland, and as a consequence he was expelled. Granting the truth of this testimony, there is no showing of any present disloyalty and only the most ephemeral evidence that petitioner ever actively opposed the government.

But respondent does not grant the truth of the testimony. It bases its contentions on several grounds. Firstly it claims that it is the well-known tactics of Communist party members to deny their association with the party. No doubt that is, in instances, the fact, but it cannot operate as a presumption rendering all testimony on the subject incredible. It must be taken in connection with other facts. The knowledge of this maneuver might well be given great weight in considering an applicant for a position involving the security of the nation. It is a bit difficult to visualize how a washroom attendant in his official capacity can give aid to his country's enemies. To believe that the conspiracy involved in " going underground " would be employed to obtain such a position borders on the fantastic.

The commission also points to these facts: On October 14, 1952, the petitioner was given a personal history sheet to fill out in connection with his application for examination. It con-

tained two questions which are material, namely, whether petitioner had ever advocated the forceful overthrow of the government or any of its subdivisions, and whether he had ever become a member of an organization which taught or advocated such a doctrine. To both these questions the petitioner answered " no ". As to the second question, it was quite proper for the commission to conclude that the answer given did not represent the fact. If it could be reasonably deduced from this that petitioner sought to mislead the commission and to conceal his former connections, it might, within reason, be further deduced that this was done for a sinister purpose. The premise is, however, lacking. The record shows no disposition to conceal his former affiliation. The petitioner is obviously a person of no great attainments and there is small reason to believe that he drew the conclusions from the questions referred to that the respondent claims he must have. The petition alleges that on prior loyalty checks petitioner had in terms revealed his early connection with the Communist party. The answer denies this. Both the assertion and the denial are unsupported but the material to support the denial is available to the respondent, not the petitioner. If conclusions are to be indulged in, in the absence of other statement, it might well be concluded that the commission derived the information which led it to the inquiry from those prior disclosures.

But, says the commission, the burden is on the petitioner to establish his loyalty. And there its rules place it (N. Y. City Mun. Civ. Serv. Comm. Rules, rule III, § VII). The rule refers to the procedure on the hearing. The minutes show the petitioner was brought before the commission, sworn, questioned and told he would be notified. With no instruction as to the object of the hearing or what he was required to prove, how was he expected to meet the burden?

There is no question that the municipality should not hire or retain in its service persons opposed to the basic concepts of our government. Nor is it beyond the discretion of those charged with that duty of regulating that employment to conclude that members of the Communist party fall in that category and act accordingly. Nor is vigilance in that connection to be condemned but commended. However, a former affiliation, long discontinued and reasonably explained, is not a sufficient foundation on which to rest the conclusions which can rightfully authorize action.

Motion granted.