Seymour Bieber,
Spec. Ref. Petitioners seek to restrain respondents from appointing persons to the position of probation officer without competitive examination or pursuant to notice of examination No. 9-542, which, in effect, adopted and employed the unassembled technique of testing.
After a finding at Special' Term that the submitted papers made necessary a trial of the issues regarding whether “the requirements of the Constitution of the State of New York pertaining to the matter herein have been met ” (Matter of Altman v. Lang, Spec. Term, Part I, Levy, J., Feb. 28, 1963), upon consent of counsel for the respective parties, this proceeding was referred to me, to hear and determine.
The evidence shows that on or about September 10, 1962, the Personnel Department of the City of New York issued its announcement No. 9542 of an unassembled examination for Probation Officer. This method of testing, an evaluation -of training and experience, obviates the necessity of applicants to assemble at a particular test site, on a day certain, for written or oral examinations. Both sides were aware that a similar examination for the position of “ psychologist ” had heretofore been determined by me to be a proper and valid testing procedure (Matter of Young v. Trussell, 42 Misc 2d 108). Both sides, nevertheless, cite this prior determination, a case of first impression in this jurisdiction, in support of their respective positions in the instant application. No other legal precedent has been called to my attention by counsel nor has independent research revealed any subsequent New York case law in point. Parenthetically, the decision in the Young proceeding has not been reviewed by an appellate court.
Respondents contend that the testing procedure involved in the instant matter is identical with that employed by them for the position of psychologist (Matter of Young v. Trussell, supra). On the other hand, petitioners argue that the unassembled technique of testing, as applied here by respondents with respect to probation officers, fails to include or to satisfy the mandatory standards of objectivity and competitiveness required by the laws of this State.
Similar arguments were made by petitioners and rejected in the Young matter. In the instant proceeding, as more fully discussed hereinafter, no competent proof was adduced nor did petitioners present or support any new, valid contention which compels a different result here. In this respect, it is to be noted the petition, as filed and as passed upon at Special Term (supra), contained as one of its material allegations and purported grievances the claim that respondents had substi *753 tuted an “ oral interview ” in lieu of an objective, competitive examination. Respondents’ answer denied such allegation and, significantly, late in the trial of the issues before me, petitioners withdrew this claim and, in effect, abandoned their position regarding this alleged substitution.
Nevertheless, there can be no doubt that the applicable laws of New York require civil service examinations, “ as far as practicable ”, to be objective and competitive (N. Y. Const., art. Y, § 6; Civil Service Law, § 50). Contrary to petitioners’ contention, however, as indicated in the Young matter (supra), compliance with these laws does not compel a perpetuation of traditional practices of personnel recruitment, such as the use of written or oral tests, which time and circumstances may render unfeasible and ineffective. The mandate of the Constitution for the selection of qualified civil service candidates, by competitive examinations “ as far as practicable ” (N. Y. Const.) cannot be transformed into an interdict against innovations such as the technique employed here, which may very well prove to be best or better adapted for the necessary demonstration of fitness and merit. Moreover, the specific language of our Constitution plainly implies that other methods and tests may be employed to ascertain the qualifications and abilities of civil service candidates (see People ex rel. Sweet v. Lyman, 157 N. Y. 368, 376). In this respect, it is significant that our courts have heretofore approved departures from usual rating practices by civil service examining boards where the methods of obtaining competent and qualified personnel were justified by existing needs and conditions (see Matter of Robbins v. Schechter, 7 Misc 2d 436, affd. 3 A D 2d 1010, affd. 4 N Y 2d 935).
The manifest purpose of the civil service statues and of our State Constitution is to improve the civil service by securing employees of greater merit and ability. To achieve this desirable end, it must also be deemed within their purpose and intendment that familiar and customary methods of examination need not perpetually control, particularly when other and newer methods clearly demonstrate a better ability to satisfy the requirements of our laws.
Regardless of the testing technique ultimately used to examine candidates for a civil service position, the examination, to be competitive, must, under existing law, employ an objective standard or measure which is capable of being challenged and reviewed by other examiners of equal ability and experience (Matter of Fink v. Finegan, 270 N. Y. 356, 361-363). The crux of this standard in the unassembled technique employed by *754 respondents and the focal point of the controversy here involved is the so-called “ rating key
Petitioners assert that the ratings of candidates which are arrived at by application here of the fixed ‘' rating key ’ ’ failed to give a factual, accurate or objective grade to an applicant’s qualifications for the position of Probation Officer. The credible testimony and documentary proof, however, fail to support such contention. The record establishes that the objective means employed here by respondents, as in the cited Young case, consisted of two principal items, (1) the fixed, extremely high level of educational attainment, a minimal prerequisite of applicants for the subject position, and (2) the “ rating key ” itself, prepared by respondents after careful consideration and expert advice, to reflect, in addition to the formal education requirements, the desired practical experience deemed advisable by experts to be possessed by candidates for the position of Probation Officer. Thus, by use of the ‘ ‘ rating key”, eligible s received 70% for the basic requirement of a master’s degree from an accredited school of social work with specialization in casework. Then, by further application of the ‘‘rating key”, eligibles received additional credit, on a competitive basis over and above the afore-mentioned 70% minimum grade, by virtue of their actual casework experience: three points for each year of supervisory, administrative or consultative experience in casework and one point for each year of professional casework experience obtained by them after training.
The proof adduced upon the trial of this proceeding established beyond doubt that this ‘ ‘ rating key ’ ’, coupled with the specific minimum educational requirements for eligibility, served to fix objective standards of training and experience consonant with the requirements for competent and capable performance of the duties and responsibilities attendant to the position here involved.
The objectivity and preciseness of the credits fixed by the “ rating key ” were clearly demonstrated by the witness Reiner, who, upon being shown certain “ examination papers ” for the first time by petitioners’ counsel, nevertheless was able to review them while on the witness stand, compute the credits and arrive at the same grade as that of the prior official examiners. Thus, inasmuch as these ratings are unquestionably precise, obtained by the use of expertly fixed standards, and are appeal-able, as in the case of all grades resulting from written tests, I hold that they are sufficiently objective and capable of being challenged or reviewed, when necessary, as required by law (Matter of Fink v. Finegan, sufra).
*755 Petitioners attempted to elicit proof to show that prior written examinations were better suited for the purpose of obtaining competent and qualified probation officer personnel. This they failed to do. Bather, the expert testimony and other credible evidence before me indicate that the unassembled technique employed by respondents is superior to the oral or written type of examination. By virtue of their higher educational attainments, including casework training attendant to the acquisition of the required master’s degree with specialization in casework (supra), expert opinion deemed the individuals recruited by this new method of testing to be better qualified to perform the functions of a probation officer than those who previously were compelled to pass written examinations.
Contrary to petitioners’ contention, nothing in the civil service laws or applicable regulations compels a candidate to be in possession of all knowledge required by the “ typical tasks ” which are described in respondents’ notice of examination. Once an eligible has shown by competitive and objective examination his potential ability to perform the duties of the position he seeks, it necessarily follows that after appointment, he will receive or at least be subjected to a certain amount of on-,the-job training, which, in effect, will disclose to him any specific, special or unusual problems he may enlcounter in the performance of these duties. Although petitioners vigorously dispute it, the fact remains that any examination given to a candidate, even though competitive,, be it written, oral or unassembled, as here, can serve to measure only the candidate’s potential ability, unless the examination itself demands actual performance of the specific duties of the subject position. Absent such performance, actual ability, as opposed to potential ability, cannot be measured in advance, as petitioners argue, with absolute mathematical certainty. Normally, however, this kind of performance is not required of a candidate, except, perhaps, in certain skilled trades. The probationary period of appointment which all civil service candidates for competitive positions are compelled to serve is designed and intended to determine finally the appointee’s actual ability to perform satisfactorily (Civil Service Law, § 63, subd. 1; 52, subd. 2; People ex rel. Sweet v. Lyman, supra).
Petitioners’ reliance upon the determinations of the Court of Appeals in Matter of Murray v. McNamara (303 N. Y. 140); Matter of Meenagh v. Dewey (286 N. Y. 292) and Matter of McNamara v. Holling (282 N. Y. 109) is ill-founded inasmuch as nothing in this record warrants the conclusion that the experience and training of candidates selected by the subject unas *756 sembled examination are not appropriate to the title of the position here involved. On the contrary, in addition to what has already been stated above, expert testimony indicated that the unassembled technique was especially effective for the rapid recruitment of individuals who possessed post-graduate education and practical experience which made them particularly suitable, and desirable, “in high demand and high priority throughout the country”, for probation work (see “ Botein Report”, 1961, Mayor’s Committee on Auxiliary Services to the Courts of New York City, pp. 5, 54 el seq.).
G-iving due consideration to the foregoing, upon the evidence before me, I hold that the unassembled technique of testing, as applied by respondents here, fully satisfies the required constitutional and legal standards of objectivity and competitiveness. The exacting educational requirements necessary for qualification, together with the objective experience standards fixed in the “rating bey” for the purpose of grading candidates for the position of Probation Officer, comply fully with the applicable provisions of the Constitution and Civil Service Law. Accordingly, the application is denied and the petition is dismissed.