Joseph P. Ktjszynski, J.
John 0. Mader and David B. La Yarnway, the petitioners herein, individually and on behalf of all others similarly situated, believed by them to be about 135 in number, seek a review of the action of the New York State Department of Correctional Services and the New York State Department of Civil Service which canceled an examination for the post of male correctional officer and scheduled a new examination therefor.
Under a procedure and practice for at least three years, persons interested in applying for the post of correctional officer in a State correctional facility were permitted to file applications at any time at any of the correctional facilities listed in the application form and then, when notified, reported for an examination at the facility selected. These examinations were conducted from time to time under the auspices of the Department of Correctional Services as the need arose; the last one was so held at the Attica Correctional Facility in February of 1971. Under this decentralized program, applications were submitted directly to the Department of Correctional Services and the applicants were tested by correctional staff members at each facility who had been trained by the Civil Service Department.
*908 On December 17, 1971 notice was given to those who had so filed at the Attica Correctional Facility since February, 1971 that their applications are no longer active, as the examination program administered by the Department of Correction was being canceled and in the future the examinations will be carried out by the Department of Civil Servicé. Thereafter, examinations were held for the post of correctional officer by the Department of Civil Service on January 5, 1972 in Rochester, New York and on January 6, 1972 in Buffalo, New York.
The petitioners in this article 78 CPLR proceeding, in seeking to nullify the results of those examinations, contend the State officials involved therein abused their administrative powers and discretion by acting in an “ arbitrary and capricious manner ”, in that the respondents have failed to notify them of the scheduling of the examinations for the post of correctional officer in Rochester on January 5 and in Buffalo on January 6, thereby excluding them and others who filed under the old procedure at the Attica facility from being examined and de facto conducted a closed rather than an open competitive examination.
The respondents defend the actions taken by them as necessary in order to relieve a source of tensions throughout the State prison system and explain that the aftermath of the tragedy in September, 1971, at Attica brought into focus that although many New York State prisons contain a substantial representation of minority groups in their populations, such groups were sparsely, or not at all, represented on the prison staffs. At Attica, where the inmates were predominantly black at the time of the September disturbance, there was not a single black on the custodial staff of approximately 400. This condition, recognized as a factor of prison unrest, had tq be corrected. The respondents explain further that it became apparent the method of recruitment employed by the Correctional Department, though inadvertent, was partially responsible for the racial imbalance in the prison’s custodial positions. Thereupon the Department of Civil Service embarked on a new program of recruitment to encourage participation in examinations by members of the minority groups represented in the prison population.
The respondent Department of Civil Service asserts also that it did not change eligibility requirements. Rather, what was changed was the method of advance publicity and the locations where the examinations were carried out. Applications were accepted “from all comers however, a special recruitment effort was made to attract minority group candidates. It contends that notice of the scheduling of the examinations in ques *909 tion was given "by posting the announcement in the offices of the Department of Civil Service and, additionally, by means of the popular news disseminating media, and the examinations were then held at locations in the core areas of the Cities of Buffalo and Rochester.
Challenged in this proceeding are the actions of the State officials which changed the procedure of recruiting guards for our correctional facilities. A deviation from an established routine does not of itself constitute an abuse of statutory powers or of the discretion permitted under the frame of power. (Matter of Altman v. Lang, 44 Misc 2d 751, affd. 23 A D 2d 820, affd. 17 N Y 2d 464.) If anything, the new method employed resulted in reaching more persons than did the former method which generated interest primarily among those residing in the immediate vicinage of a correctional facility.
The Civil Service Department readily admits in its answering papers that when it succeeded the Department of Correctional Services in the testing program it "did not take over the applications filed with the Correctional Department and, while the applicants under the old program were notified of its discontinuance, the Civil Service Department did not personally notify any of them of the examinations scheduled for Buffalo and Rochester. This failure to notify forms the crux of the petitioners’ grievance.
Information was submitted to this court which indicates that in the examination held on January 5, 1972 in Rochester, 16 black and 2 white persons participated; of that number 11 black and 2 white applicants were found to be fully qualified or passable pending further investigation. In Buffalo on January 6, 1972, 37 black and 36 white persons were examined and of that number 28 black and 31 white applicants qualified or were considered passable pending further investigation.
Germane to the issue of the notice is the uncontroverted fact that at least 16 of those who had filed under the discontinued examination program took the January, 1972 examinations.
The respondents stress that they did not cancel a scheduled examination but terminated the entire program under which the examinations were held and while a number of applications had been filed up to and including December 17,1971, no examination in fact had been scheduled when the Correctional Department’s examination program was scrapped.
The petitioners do not deny receipt of the notice advising them of the discontinuance of the previous procedure. By their mere act of filing an application for the post of correctional *910 officer under the now defunct Correctional Department’s program, the petitioners did not acquire any vested rights mandating the Department of Civil Service to give them a notification of future examinations other than by the usual notice of posting the announcement in the offices of the Civil Service Department
The respondent Civil Service Department maintains that announcements of the examinations were posted as required in its offices, including Rochester and Buffalo, and contends further that there is no requirement or necessity to post the announcement of the examinations in the offices of the “ appointing officer ”, meaning here, the Attica Facility, when the civil service examination is of an open competitive nature rather than a promotional one and falls, therefore, within the exception contained in subdivision 2 of section 51 of the Civil Service Law.
This court finds that the procedure complained of was not violative of the statutory powers granted to the Department of Civil Service under article 4 of the Civil Service Law.
“ Of course, the time and the place and the conditions under which such examinations will be held are largely in the discretion, as they must be, of the Civil Service Commission with which discretion the courts are loathe to interfere ”, said the Court of Appeals in the Matter of Booker v. Reavy (281 N. Y. 318, 321); nor were the actions within the frame of power arbitrary (Matter of Marburg v. Cole, 286 N. Y. 202; Matter of Altman v. Lang, supra), but well within the latitude of permissive discretion. The Department of Civil Service, in accordance with the powers granted unto it, properly canceled an examination procedure which no longer was appropriate and substituted therefor a new examination procedure which is calculated to meet the current needs. (See Matter of Council of Supervisory Assns. v. Board of Educ. of City of N. Y., 23 N Y 2d 458 on need “ to reach an ethnic group ”.)
“ State action based partly on considerations of color, when color is not used per se, and in furtherance of a proper governmental objective, is not necessarily a violation of the Fourteenth Amendment ”. (Porcelli v. Titus, 431 F. 2d 1254, 1257.)
The petitioners do not have .standing under CPLR 1005 (subd. [a]) to bring a representative action on behalf off all those who have filed an application for the post of a correctional officer under the discontinued procedure. As it was pointed out previously, at least 16 of this group took the examinations here under review. It is impossible to delineate with any degree of certainty the members of the class on whose behalf the petitioners desire to appear as it must be reasonably assumed under the *911 circumstances that some of this group may well have chosen not to take the examinations for other valid reasons, even if they might have had notice thereof. This court concludes the situation and the issues present do not commend themselves to a class action. (Gaynor v. Rockefeller, 15 N Y 2d 120; Society Milion Athena v. National Bank of Greece, 281 N. Y. 282.)
No facts were presented to warrant a hearing or any further proceedings on the petition herein as the petitioners have not established a need for judicial intervention.
It is not necessary for this court at this time to pass upon the remaining objections advanced by the respondents to the petition herein.
The application for a preliminary injunction is denied, the petition is dismissed and the restraining order previously entered is hereby vacated.
Submit order accordingly.