THE PEOPLE OF THE STATE OF NEW YORK ex rel. ROBERT CRUMMEY, Respondent, *v.* GEORGE W. PALMER, as Comptroller of the City of Brooklyn, Appellant.

1. MUNICIPAL EMPLOYMENT — CONFIDENTIAL RELATION.   A confidential relation, between an appointing officer and his subordinate, exists within the meaning of Laws of 1888, chapter 119, section 1, as amended by chapter 577, Laws of 1892, when an officer, upon whom the statute casts a duty involving skill and integrity, and a liability either personal or on the part of the municipality which he represents, intrusts the discharge of the duty to the subordinate.

2. ASSISTANT WARRANT CLERK TO THE COMPTROLLER OF THE CITY OF BROOKLYN — CONFIDENTIAL RELATION.   An assistant warrant clerk in the office of the comptroller of the city of Brooklyn, by reason of the fact that a greater portion of the duties devolving upon his position involve skill and integrity, which duties, if carelessly or negligently performed, might result in great loss to the comptroller or the city, holds a confidential relation to his superior officer within the meaning of Laws of 1888, chapter 119, section 1, as amended by chapter 577, Laws of 1892, and may be discharged without cause shown.

*People ex rel. Crummey* v. *Palmer*, 9 App. Div. 58, reversed.

(Argued March 1, 1897; decided March 9, 1897.)

APPEAL by the defendant, individually, and as comptroller of the city of Brooklyn, from an order of the Appellate Division of the Supreme Court in the second judicial department, entered October 19, 1896, which affirmed an order and judgment awarding a peremptory mandamus in favor of the relator, the nature of which and the facts relating thereto are stated in the opinion.

*B. F. Tracy* for appellant, individually.   The action of the comptroller in removing the relator was legal because the relator fell within the classes expressly excepted by the statute. (L. 1888, ch. 583; *People ex rel.* v. *Arnbruster*, 59 Hun, 586; *People ex rel.* v. *Baker*, 68 N. Y. S. R. 5; *In re Ostrander*, 12 Misc. Rep. 476.)   The proof offered to show that the comptroller had constructive notice of the relator's exemption, taken under objection and exception, was inadmissible. (*People* v. *Wallace*, 55 Hun, 149; *Denton* v. *O. C.*

28

*Nat. Bank,* 150 N. Y. 137; *Field* v. *Mayor of N. Y.,* 6 N. Y. 179; *Constant* v. *University of Rochester,* 111 N. Y. 604; *W. Nat. Bank* v. *Irons,* 8 Fed. Rep. 1; *Slattery* v. *Schwannecke,* 118 N. Y. 543.) The relator's claim for a writ of mandamus is barred by his *laches.* (*People ex rel.* v. *Justices, etc.,* 78 Hun, 334; *People ex rel.* v. *Collis,* 6 App. Div. 468.) This proceeding having been brought against the comptroller in his official capacity, the court has no jurisdiction to award damages against him individually. (Code Civ. Pro. § 2088.) The relator cannot recover damages against Mr. Palmer either in this or any other proceeding. If the relator was illegally removed his back salary is an obligation of the city of Brooklyn, for which it alone is liable. (*Fitzsimmons* v. *City of Brooklyn,* 102 N. Y. 536; *People ex rel.* v. *Police Comrs.,* 114 N. Y. 245.)

. *Joseph A. Burr* for appellant as comptroller of the city of Brooklyn. The relator held a confidential relation to his appointing officer (the comptroller) and was not, .therefore, protected by the provisions of chapter 577 of the Laws of 1892. (L. 1888, ch. 583; *People ex rel.* v. *Baker,* 68 N. Y. S. R. 5; *People ex rel.* v. *Armbruster,* 59 Hun, 586.)

*Charles J. Patterson* for respondent. The duties performed by the relator were in no sense confidential to the appointing power. They consisted merely in the performance of public business with the public, and involved no personal relations between the comptroller and Crummey. (*People ex rel.* v. *O'Brien,* 9 App. Div. 428; L. 1888, ch. 583, §§ 12, 26; *Walsh* v. *Trustees N. Y. & B. Bridge,* 96 N. Y. 436; *Hannon* v. *Agnew,* 96 N. Y. 439; *Donovan* v. *McAlpin,* 85 N. Y. 185; *Murphy* v. *Com., etc.,* 28 N. Y. 134; *People ex rel.* v. *Wright,* 150 N. Y. 444; *People ex rel.* v. *Sutton,* 88 Hun, 173; *People ex rel.* v. *Barker,* 14 Misc. Rep. 360.) The defendant Palmer is personally liable in damages under this proceeding. (*Higgins* v. *Mayor, etc.,* 131 N. Y. 128; *Terhune* v. *Mayor, etc.,* 88 N. Y. 247; *Dolan* v. *Mayor, etc.,* 68 N. Y. 274; *McVeany* v. *Mayor, etc.,* 80 N. Y. 185.)

HAIGHT, J.   Robert Crummey, the relator, was a member of the volunteer fire department of the city of Brooklyn, and as such had served the time required by law, and had received his discharge.   In May, 1886, he was appointed to the position of assistant warrant clerk in the office of the comptroller of the city, and continued in that position until the 30th day of January, 1895, at which time he was discharged by the comptroller.   On the 19th day of July, 1895, he instituted proceedings for a mandamus to compel his reinstatement.   An alternative writ was issued, upon which issue was joined, which was tried before a judge and jury and resulted in a verdict in favor of the relator.   Upon the verdict so rendered a peremptory writ of mandamus was issued which has been affirmed by the Appellate Division.   Upon the trial before the jury the judge charged as a matter of law that the relator did not occupy a confidential relation to the appointing officer within the meaning of the statute.   To this charge an exception was taken by the appellant.   The statute provides that "no person holding a position by appointment in any city or county of this state or who may hereafter be appointed, receiving a salary from such city or county (unless he has been appointed for a definite term), who is an honorably discharged soldier, sailor or marine, having served as such in the Union army or navy during the war of the rebellion, or the Mexican war, and who shall not have served in the Confederate army or navy, or who shall have served the time required by law in the volunteer fire department of any city, town or village in the State, or who shall have been a member thereof at the time of the disbandment of said volunteer department, shall be removed from such position except for cause shown after a hearing had ; but this provision shall not be construed to apply to the position of private secretary or chief clerk or deputy of any official or department, or to any other person holding a confidential relation to the appointing officer."   (Laws of 1888, ch. 119, § 1, as amended by ch. 577, Laws of 1892.)

What is a "confidential relation" to the appointing officer ?   A complete definition may be difficult.   We shall only attempt

one in general terms. The meaning of "confidential" has two elements, that of secrecy and that of trust and confidence. Confidential relation, in law, as defined by the Century Dictionary, is a relation of parties in which one is bound to act for the benefit of the other and can take no advantage to himself from his acts relating to the interest of the other. Such a relation arises whenever a continuous trust is reposed by one person in the skill or integrity of another. The statute which we have under consideration has reference to officials, and the confidential relations mentioned undoubtedly have reference to official acts, and include not only those that are secret, but those that involve trust and confidence which are personal to the appointing officer. If, therefore, the statute casts upon an officer a duty involving skill or integrity, and a liability either personal or on the part of the municipality which he represents, and he intrusts the discharge of this duty to another, their relations become confidential.

It appears that the defendant became comptroller of the city of Brooklyn on the first day of January, 1895; that as such he became the chief financial officer of the city, charged with the duty of keeping the accounts of its receipts and disbursements and the paying of the demands upon it by warrants drawn upon the treasurer; that the annual expenditures amounted to from ten to thirteen millions of dollars, which, in the year 1895, were paid out upon 46,000 warrants; as comptroller he was also a member of the board of estimate, which occupies nearly a month each year in making up the budget; he was also a member of the sinking fund commission, which has meetings on an average of once a week during the year, and a member of three other commissions, which held occasional meetings. The duties of his position were of such a character that it was impossible for him to personally discharge them, and he of necessity was compelled to intrust the performance of them largely to subordinates.

The relator's duties consisted in taking care of the bills and vouchers as they came in, filing them away, of getting them out and exhibiting them when called for, and seeing that the

papers and boxes were kept in their places.   In case of the sickness or absence of the warrant clerk he filled out the warrants for the payment of bills, and, after they were signed by the proper officers, the warrants were returned to him.   He then examined the bills to see if they were properly made out and verified, whether they were properly audited and certified, and, if correct, he delivered the warrants to the persons entitled thereto, first requiring them to be identified if they were not personally known to him.   In addition to this he was charged with the duty of keeping track of the liens filed and of the executions and attachments levied upon claims in the office and of examining the same before delivering warrants to claimants.

It will thus be seen that the greater portion of the duties devolving upon the relator's position involved skill and integrity, and if the duties were carelessly or negligently performed, it might result in great loss either to the comptroller or the city.   It is said that the defendant could not be held responsible for the misfeasance or nonfeasance of the relator. Chapter 583 of the Laws of 1888, title 3, § 12, so provides as to third parties.   The act does not purport to relieve the defendant, so far as the city is concerned, as to losses or liabilities incurred through his or his subordinates' misconduct or negligence in the discharge of the duties of his office ; as a faithful officer he would be interested in protecting the interests of the city and in the saving of it, as well as himself, from responsibility.   It appears to us that the position is one requiring trust and confidence, and that it is, within the provision of the statute, a confidential relation to the appointing officer.   In the *Matter of Ostrander* for a writ of mandamus (12 Misc. Rep. 476), the applicant sought the position of deputy superintendent of public buildings ; the mandamus was asked for under the provisions of chapter 716 of the Laws of 1894, which provide as follows : "But the provisions of this act shall not be construed to apply to the position of private secretary or deputy of any official or department, or to any other person holding a strictly *confidential* position."   It was

held at Special Term that the position was confidential, and that case was affirmed in the General Term and by.this court upon the opinion of the Special Term. (146 N. Y. 404.)

It is claimed that under the classification of officers by the civil service commission the relator was placed in Schedule A in the class of those occupying confidential relations with the appointing officer; that under the statute the civil service commission is required to classify the employees in the public offices, and that this classification has the force and effect of a statute; and that the provisions of this act should be construed in accordance therewith. Under the construction of the provisions of the act above given a determination of this question is at this time unnecessary.

The judgment and order should be reversed and the motion for a mandamus denied.

All concur, except O'BRIEN and VANN, JJ., dissenting.

Judgment accordingly.