The People of the State of New York ex rel. James J. Flood, Respondent, *v.* Asa Bird Gardiner, District Attorney of New York County, Appellant.

Public Service — Veterans — Subpœna Server in District Attorney's Office — Confidential Position. The position of subpœna server in the office of the district attorney of New York county is a strictly confidential position, and is therefore exempt from the operation of the act (L. 1896, ch. 821) restricting the removal of veterans from the public service.

*People ex rel. Flood* v. *Gardiner,* 33 App. Div. 204, reversed.

(Argued November 22, 1898; decided January 10, 1899.)

Appeal from an order of the Appellate Division of the Supreme Court in the first judicial department, entered November 15, 1898, reversing an order of the Special Term denying a motion for a peremptory writ of mandamus requiring the district attorney of the county of New York to reinstate the relator as a subpœna server in his office, and granting the writ.

The facts, so far as material, are stated in the opinion.

*Asa Bird Gardiner* and *Charles E. Le Barbier* for appellant. The relator is not within the terms of the law, even in a proper case, to entitle him to a mandamus. No demand, in person or by duly-served communication, has ever been made by the relator upon the district attorney, nor has the latter been informed by proper proof that the relator is a veteran. (U. S. R. S. [2d ed.] §§ 1426, 1427.) It is not practicable for any representative of the district attorney's

1899.]      People ex rel. Flood v. Gardiner.      521

N. Y. Rep.]                    Points of counsel.

office to be selected by examination, as, for instance, under the Civil Service Law, and the Veteran Act does not apply thereto. Within the meaning and intention of the Constitution and of the statute competitive examination is not practicable for positions of a confidential relation to the appointing officer. (*Chittenden* v. *Wurster*, 152 N. Y. 345.) An examination of the Code of Criminal Procedure, or any law relating to the office of the district attorney, fails to disclose any such office as " subpœna server." (L. 1896, ch. 772, § 5; Code Civ. Pro. § 835; Code Crim. Pro. § 614; Const. N. Y. art. 10, § 1; *People ex rel.* v. *Palmer*, 152 N. Y. 219; *Chittenden* v. *Wurster*, 152 N. Y. 358.) The district attorney's office is not a public department or a department of public works, but a state office, classified by the Revised Statutes as a judicial one. (*People ex rel.* v. *Nicoll*, 32 N. Y. Supp. 280; *People ex rel.* v. *Fire Comrs.*, 73 N. Y. 437; *Ex parte Hennen*, 13 Pet. 230; *People ex rel.* v. *Mayor, etc.*, 5 Barb. 43; *Laimbeer* v. *Mayor, etc.*, 4 Sandf. 109; *Torney* v. *Stiner*, 32 N. Y. Supp. 277; *McDonald* v. *Mayor, etc.*, 33 Hun, 667; 102 N. Y. 728; *Whitmore* v. *Mayor, etc.*, 67 N. Y. 21.) To entitle the relator to a writ of mandamus he must show that right to the office is clear and distinct. (*People ex rel.* v. *Village of Cohocton*, 17 Misc. Rep. 652.) The district attorney of the county being a constitutional officer, the powers and duties pertaining to his office at the time of the adoption of the Constitution cannot be curtailed, limited or infringed upon by an act of the legislature. (*People ex rel.* v. *Bd. Suprs.*, 134 N. Y. 1.)

*James C. Cropsey* and *Charles J. Patterson* for respondent. Unless the position held by the respondent was strictly confidential he is entitled to be reinstated. (L. 1896, ch. 821; L. 1892, ch. 577.) The position which the respondent held was not a strictly confidential one to the appellant. (Code Crim. Pro. §§ 609, 610; *People ex rel.* v. *Sutton*, 88 Hun, 173; *People ex rel.* v. *O'Brien*, 9 App. Div. 428; *People ex rel.* v. *Palmer*, 152 N. Y. 217; *Chittenden* v. *Wurster*, 152

522     People ex rel. Flood v. Gardiner.     [Jan.;

Opinion of the Court, per Parker, Ch. J.     [Vol. 157.

N. Y. 345; *People ex rel.* v. *Tobey*, 153 N. Y. 381.) The action of the civil service commission is not binding upon the court. (*People ex rel.* v. *Palmer*, 9 App. Div. 58; *People ex rel.* v. *Tobey*, 153 N. Y. 381.)

Parker, Ch. J. We approve of the decision made at Special Term, and the reasons assigned by Mr. Justice Kellogg in support of it, and should not feel called upon to add a word but for the statement of facts at the Appellate Division, which leaves out so much that is material that it does not seem to us to present the situation as it really is.

The legal question involved is, was the relator's position in the district attorney's office a strictly confidential one, as that term is used in the so-called Veteran Act? If it was, then the Special Term correctly disposed of the controversy; otherwise the Appellate Division did, for the relator was an honorably discharged sailor and entitled to be continued in the public employment in a subordinate position, unless that particular position belongs to the class covered by one of the exceptions to the "Veteran Act," viz., "a position strictly confidential."

The district attorney of the city and county of New York has a number of assistants who occupy positions created by statute, and whose salaries are fixed by law, but in addition to that he is obliged to avail himself of extra help, such as clerks and stenographers, and so-called subpœna servers, and others who serve in various capacities. The creation of such offices and the designation of incumbents to fill them have always been entirely discretionary with the district attorney, and have not been made subject to the state civil service rules nor to the rules and regulations of any of the departments of the government of the city and county of New York, and the same is true as to that particular office in all of the other counties of the state. The expense of conducting the district attorney's office in the city and county of New York is made a county charge, but as a matter of convenience, and in anticipation of county charges payable by the municipality, appro-

1899.]    People ex rel. Flood v. Gardiner.    523

N. Y. Rep.]    Opinion of the Court, per Parker, Ch. J.

priations are annually made by the board of estimate and apportionment to meet all necessary expenses. Regardless of such appropriations, however, the district attorney has always been, and still is, required to make appointments and avail himself of the services of individuals, whose expenses are to be met by the county, the question of the capacity of the persons to be employed and the compensation to be paid resting in his discretion.

By section 614 of the Code of Criminal Procedure it is provided that a peace officer must serve any subpœna delivered to him, or the subpœna may be served by any other person. The duty of serving subpœnas is not by this section exclusively imposed upon the district attorney, who may require the work to be performed by peace officers, but he is authorized to designate other persons to perform that duty, and the reason for such authorization will quite satisfactorily appear when we state some of the duties that are necessarily performed by persons so designated. In pursuance of the authority conferred by this section of the Code, the district attorney of the city and county of New York has designated a number of persons from time to time, as the exigencies of public business have seemed to require, to serve subpœnas and perform a variety of other important duties, to some of which reference will be made. For convenience the persons so appointed have been called subpœna servers, and we shall hereafter speak of them as such, although there is no statutory office of that character. It is a designation of a class of persons in the district attorney's office, who are engaged in serving subpœnas, as well as in other work.

The relator while in the employment of the district attorney was a subpœna server. The subpœna servers spend the greater part of their time in the district attorney's office, where they must be ready to perform emergent services, which daily and hourly arise. They are constantly thrown in contact with the district attorney's assistants in their private offices, while such assistants are engaged in private examination of witnesses, whose mere presence, should it be known to a defendant or his

524        People ex rel. Flood v. Gardiner.        [Jan.,

Opinion of the Court, per Parker, Ch. J.        [Vol. 157.

counsel, might seriously prejudice the prosecution. The subpœna servers are frequently, of necessity, in the rooms of such assistants while examinations are being conducted, and are thus made aware of everything that occurs in the office. In the discharge of the duties of the office by the district attorney and his numerous assistants it is often necessary to make subpœna servers acquainted with the facts of the contemplated indictment of persons not in custody, and they are intrusted with processes to bring before the grand jury witnesses against persons not in custody, which processes recite the name of the accused party, and thus it is important that the district attorney should be at all times able to give to these officers his implicit confidence, and to trust in their integrity and discretion. Otherwise, by connivance or collusion with interested defendants, prosecutors and witnesses for the people might be kept out of the way of him who would serve the processes upon them. Oftentimes, in order to secure the presence of delinquents, it becomes necessary to acquaint the subpœna servers with the general facts of the case.

Frequently the subpœna servers are intrusted with the custody of papers containing confidential statements of facts and information, the disclosure of any part of which might frustrate the district attorney in the discharge of important public duties. These officers are also required to serve notices on sureties for accused parties out on bail, on sureties under recognizance and counsel for defendants, and frequently after a defendant has been convicted or has pleaded guilty, if the court suggests a desire for information touching the previous history of the defendant, with a view to determine the measure of punishment, witnesses are summoned and an investigation undertaken to acquire the desired information, and such service is almost invariably rendered by the subpœna server.

These facts are undisputed, although the affidavit of the relator states some other facts.

It would be indeed unfortunate for the public service if the district attorney's office of New York county, or of any of the

1899.]     People ex rel. Flood *v*. Gardiner.     525

N. Y. Rep.]     Opinion of the Court, per Parker, Ch. J.

counties in this state, should be obliged to have continued in its service a person having to discharge duties of the character set forth in the affidavits presented by the appellant. Those affidavits are in no wise contradicted. They are made by the district attorney and by Mr. Henry W. Unger, assistant district attorney, who has successively filled the offices of bail clerk, pardon clerk, secretary to the district attorney, chief clerk and deputy assistant district attorney before his promotion to his present position, and who has had, therefore, opportunity to thoroughly understand and fully appreciate the importance of the retention of employees in that particular service who can be implicitly trusted under any and all circumstances. If there was any mistake about the statements contained in these affidavits, the relator had opportunity to procure the affidavits of others who in times past have been connected with the district attorney's office in one capacity or another, but he did not do it; he left the affidavits unchallenged, and we must assume that they are not only true, but that they do not at all exaggerate the importance of maintaining absolute freedom in the district attorney to employ and discharge at will men upon whom are imposed such important duties.

It is true that the relator in his petition undertakes to describe the duties that he personally had to perform, and he says that he never received any communication whatsover from the district attorney of New York from the date of his appointment to the date of his discharge, and was never directed by that officer to do or perform any act whatsoever, and that the district attorney had never spoken to him except on the day of his appointment. His duties he described as follows: " I was occasionally called upon by one of the assistant district attorneys of said county to explain why I had been unable to find a certain witness whom he wished to subpœna, and also occasionally sent by one of the assistant district attorneys to do some errand for him, to carry his coat or bag, or some other package, for him to different places, or some like act." This is, doubtless, a true statement of what he did, and we must assume that it is what he had to do. But it in no wise

contradicts the assertion of the affidavits made later, to which he had opportunity to reply, that the duties he performed were not all that were required of persons whom, for convenience, they term subpœna servers. It indicates merely that the work that the relator did in fact do was about all that the then incumbent of the district attorney's office thought he should be called upon to perform. But because he could not discharge the general duties of the position of subpœna server, so-called, or because he was not deemed worthy to discharge them, does not at all affect their confidential character.

The learned justice at Special Term, in discussing this question, said : " It seems that the duties of a subpœna server are determined by the district attorney. The services of the subpœna server may be dispensed with altogether, or the numbers may be increased or diminished as the needs of the district attorney's office may require. His duties are nowhere defined. That he comes in close contact with the secretly-working machinery of the public prosecutor is apparent; indeed, he in practice has charge of an important part of this machinery, and, while his duties may in a measure be ministerial, he becomes possessed of many important secrets, to divulge which might easily cripple the best efforts of his superior. It is clear to one who understands the duties of a district attorney, the methods necessary to adopt to successfully prosecute criminals, that the relation of the highest confidence must exist and be preserved on the part of the prosecuting officer towards every subordinate who can or may, under any circumstances, be possessed of office secrets, or operate any part of the secret machinery of the office. Any weakening of this confidence, whether it arises through actual cause or suspicion of matters unprovable, at once affects the efficiency of the service. There is no cure for this but removal. To tie the hands of the district attorney would make it impossible for him to preserve between himself and his subordinates that essential element — absolute confidence. I think the position to which the relator asks to be restored is properly classified when placed within the exception men-

tioned in the so-called 'Veteran Act,' and the writ should be denied."

These reasons, and the decisions of this court in *People ex rel. Crummey* v. *Palmer* (152 N. Y. 217) and in *Chittenden* v. *Wurster* (152 N. Y. 345), fully support, as we think, the decision of the Special Term.

The order of the Appellate Division should be reversed and that of the Special Term affirmed, with costs.

HAIGHT, J. (dissenting). An able and ingenious argument has been presented to show that a subpœna server occupies a *strictly confidential* relation to the district attorney. It fails, however, to convince me that such a relation was ever intended by the legislature.

It is true that this controversy arises under the Veterans' Act and not under the civil service statute. But if the position is strictly confidential under that act it follows that it must be so regarded under the Civil Service Act. Taking this case as a precedent, what position is there in the civil service of this state, above that of common day laborers, in which an equally forcible and plausible argument may not be made in support of the claim that it is confidential? Take the police in the cities of the state, secret orders to watch suspected places and arrest wrongdoers are of daily occurrence. Must policemen be held to be confidential? The bookkeepers in the various departments of the state must, of necessity, know much of the transactions of the office and of the secrets contained in its files and documents. The comptroller is required to audit and pass upon the claims presented against the state. He relies upon his bookkeepers for the details in the items of accounts and for information in reference to the merits of the claims. Are not these bookkeepers also confidential? Where are we to draw the line? We said in the *Chittenden* v. *Wurster Case* (152 N. Y. 345) that the rule laid down in the *Crummey Case* (152 N. Y. 217) ought not to be extended, and yet it is now proposed not only to extend the rule in that case, but to cast aside all previous rules and restrictions laid

down by this court, and throw open the door so wide as to permit a great majority of the positions in the civil service of the state to be held to be confidential, and, consequently, not subject to the provisions of the statute requiring appointments to be made to office so far as practicable upon competitive examinations.

It does appear to me that the holding that a subpoena server is a strictly confidential employee will result not only in virtually nullifying and rendering ineffective the statute, but the Constitution as well.

PARKER, Ch. J., reads for reversal; GRAY, O'BRIEN and VANN, JJ., concur. HAIGHT, J., reads dissenting opinion, and BARTLETT and MARTIN, JJ., concur.

Order reversed, etc. ·