(56 Misc. Rep. 289.)

PEOPLE ex rel. COIT v. WHEELER et al., Civil Service Com'rs.

(Supreme Court, Special Term, Erie County. July, 1902.)

1. MANDAMUS—SUBJECTS OF RELIEF—MUNICIPAL BOARDS.

Mandamus will lie to compel the municipal civil service commission of the city of Buffalo to exempt the position of registrar in the bureau of water from the competitive class; its action in so classifying it not being judicial.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 33, Mandamus, §§ 127–134.]

2. MUNICIPAL CORPORATIONS—MUNICIPAL DEPARTMENTS—REVIEW OF ACTS BY COURT.

The Supreme Court has power to review the classification of the municipal civil service commission, and, if erroneous, to direct a proper classification.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 36, Municipal Corporations, § 155.]

3. SAME—CIVIL SERVICE LAWS—EXAMINATIONS.

Const. 1894, art. 5, § 9, provides that appointments in the civil service of cities shall be made according to merit and fitness, to be ascertained as far as practicable by examination, which, so far as practicable, shall be competitive. Laws 1899, p. 795, c. 370, §§ 8, 12, passed to carry into effect the constitutional mandate, excepts from the operation of the civil service regulations certain offices and positions, and places in exempt classes all subordinate offices for the filling of which examinations are impracticable. *Held*, that under these provisions, recognizing the existence of places in the civil service for which no examination is practicable, and placing in the exempt class offices where examinations may be found to be impracticable, confidential positions are exempt from examination, since for the filling of such positions examinations are not practicable.

4. SAME—CONFIDENTIAL POSITIONS—WHAT ARE.

The registrar in the bureau of water in the city of Buffalo is appointed by the commissioner of public works, and his duties are delegated to him by the commissioner. He is given special charge of the general office, having immediate supervision over many subordinates, who receive all the water rates paid to the city; and he is required to examine vouchers for expenditures of the bureau for maintenance and pipe extensions. In the absence or inability of the deputy commissioner, he is charged by the commissioner with the entire control of the bureau, and it is his duty, also, to hear and adjust complaints made by users of water. Under City Charter, § 271, subd. 1, and section 273, subd. 2, and section 286, providing that the commissioner of public works shall collect all the water rates for the city and pay to the treasurer all moneys received by him,

and section 48, requiring him to file a bond conditioned for the faithful performance of the duties of his office, and for the accounting for and payment to the city of all moneys received by him, and section 477, providing that each officer of the city shall be liable on his official bond for the conduct of his deputies, the registrar of the bureau of water would be liable for misappropriating funds of the city. *Held*, that the duties and liabilities of the office of registrar of the bureau of water make it a confidential position, and hence not subject to examination under the civil service rules.

Mandamus by the people, on the relation of Frank S. Coit, against Charles B. Wheeler and others, constituting the municipal civil service commission of the city of Buffalo, to compel respondents to exempt the position of registrar in the bureau of water in said city from examination under the civil service rules and to certify the appointment of relator as registrar. Writ granted.

O'Malley & Cuddeback, for applicant.

Edward L. Jung, for respondents.

KENEFICK, J. The relator, Coit, asks that the defendants, constituting the municipal civil service commission of the city of Buffalo, be directed by a writ of mandamus to exempt the position of registrar in the bureau of water in said city from examination under the civil service rules, and to certify the appointment of said Coit as such registrar.

At the outset the objection is interposed that mandamus is not the proper remedy; that, as the commission has placed the position in the competitive class, its determination upon that subject is judicial in its nature, and can be reviewed, if at all, only by a writ of certiorari. Discussion of this question is foreclosed by the decision of the Appellate Division in the First Department in the recent case of People ex rel. Mack v. Burt, 65 App. Div. 157, 72 N. Y. Supp. 567, affirmed without opinion in the Court of Appeals, 170 N. Y. 620, 63 N. E. 1121. In that case a taxpayer sought to review by certiorari the classification by the municipal civil service commission of a certain position in the civil service of the city of New York. The court dismissed the writ, and in its opinion says:

"A classification of the officers is necessary to determine the method of appointment, and such a classification is no more a judicial determination than is the designation of the officer by the appointing power under the provision of the statute."

That this court has the power to review the classification of the civil service commission, and, if erroneous, to direct a proper classification, is too well settled by judicial authority to admit of serious dispute. Chittenden v. Wurster, 152 N. Y. 345, 46 N. E. 857, 37 L. R. A. 809. In People ex rel. Sweet v. Lyman, 157 N. Y. 368, 52 N. E. 132, the commission had classified as competitive the position of special agent of the excise department, and it was argued that this classification precluded the court from holding that this was a confidential position, and therefore exempt from examination. In passing upon this claim the Court of Appeals says:

"Surely the civil service commission cannot change the actual status of a position by declaring one which is actually confidential not to be so."

And the court held that the classification was improper. Mandamus lies to compel public officers to do those acts which clearly appertain to their duty (13 Encyc. of Pleading and Practice, 493), and this remedy is suggested as appropriate to compel a proper classification of positions in the civil service by Judge Haight, writing for the court in the Chittenden Case, supra, and by Justice Davy in Rowley v. City of Rochester, 34 Misc. Rep. 291, 69 N. Y. Supp. 160.

The system of examination for entrance into the civil service was introduced in this state by chapter 354, p. 530, of the Laws of 1883. That statute, and every subsequent statute upon the subject prior to the adoption of the amended Constitution of this state in 1894, recognized that there were certain offices and positions in the civil service for which examinations were not practicable. Certain positions were expressly exempted from examination by the statutes, and the other places were required to be classified for the purpose of examination "so far as is practicable." Laws 1883, p. 530, c. 354, and amendatory acts. The civil service system, so called, was imbedded in the fundamental law of this state by the adoption of section 9 of article 5 of the Constitution of 1894, which provides:

"Appointments and promotions in the civil service of the state, and of all the civil divisions thereof, including cities and villages, shall be made according to merit and fitness, to be ascertained, so far as practicable, by examination, which, so far as practicable, shall be competitive."

This constitutional provision recognizes, first, that there are places in the civil service for which no examination is practicable; and, second, that there are other positions for which competitive examinations are not practicable, and for which noncompetitive examinations should be held. The existing statute (Laws 1899, p. 795, c. 370), passed to carry into effect the constitutional mandate, excepts altogether from the operation of the civil service regulations certain offices and positions (section 8), and places in the exempt class certain other specified offices and "all other subordinate offices, for the filling of which competitive or noncompetitive examinations may be found to be not practicable" (section 12). The present law does not, nor did any prior civil service statute, expressly and in terms declare that confidential positions should be exempt from examination. Confidential positions are and were expressly excepted only from the operation of the veterans' statutes, so called. Laws 1899, p. 809, c. 370, § 21; Laws 1888, p. 162, c. 119; Laws 1894, p. 1797, c. 716; Laws 1896, p. 753, c. 821; Laws 1898, p. 444, c. 184. The Court of Appeals, in the Chittenden Case, supra, exempted confidential positions from examination by a judicial construction of the civil service provision of the Constitution above quoted, holding that as to such positions examinations were not practicable.

The conclusion being reached that the relator has involved the proper remedy, and that this court has the power to review the classification of the civil service commission, we are thus brought to the question as to whether the relator's position should be placed in the exempt class. As it is not expressly exempted by the statute, our examination is limited to a determination as to whether it is a confidential position. In the Chittenden Case the Court of Appeals says:

"In order to determine whether the examination of a candidate for an office is practicable, we must first ascertain the nature and character of the duties of his position. Having ascertained the facts, the question of exemption then doubtless becomes one of law." Page 358 of 152 N. Y., page 860 of 46 N. E. (37 L. R. A. 809).

The department of public works of the city of Buffalo is in charge of a single elective commissioner, who has general charge and control of the water supply, sewer system, public streets and places, except parks and park approaches, and all public works, structures, and improvements, and of the construction, alteration, and repair of all buildings in the city. There are four bureaus in the department, each of which is in immediate charge, under the commissioner, of a deputy commissioner. The deputies and all other officers and employés of the department are appointed and removed by the commissioner. The bureau of water is charged with the duty of obtaining the water supply, distributing it to the consumers, and collecting the water rates. This bureau is in practice divided into three branches—the general office, in the municipal building; the storehouse, several blocks distant; and the pumping station, two miles away. The duties of his position require the deputy to attend all three branches. The pumping station is under the special charge of a chief engineer, whom the municipal commission placed in the exempt class. The storehouse is in special charge of a general foreman, likewise placed in the exempt class.

The duties of the relator are not defined by the charter or ordinances of the city, but are delegated to him by the commissioner of public works under the general power conferred by the charter on the commissioner "to make and enforce rules and regulations for the government of the officers and employés of the department in the discharge of their duties." Buffalo City Charter, Laws 1891, p. 200, c. 105, § 284. The relator is given special charge of the general office, having immediate supervision of 50 subordinates. including a cashier and assistant cashier, who receive water rates amounting to upwards of $600,000 a year. He is at times required to examine vouchers for the expenditures of the bureau for maintenance and pipe extensions, which expenditures amount to about $150,000 a year, exclusive of salaries. In the absence or inability of the deputy commissioner he is charged by the commissioner with the entire control of the bureau. It is his duty, also, to hear and adjust complaints made by users of water. The Court of Appeals in the Chittenden Case furnished this definition of a confidential position, viz.:

"Where the duties of the position are not merely clerical, and are such as especially devolve upon the head of the office, which, by reason of his numerous duties, he is compelled to delegate to others, the performance of which require skill, judgment, trust, and confidence, and involve the responsibility of the officer, or the municipality, which he represents, the position should be treated as confidential." Page 360 of 152 N. Y., page 861 of 46 N. E. (37 L. R. A. 809).

I think it will be conceded that the duties of water registrar as above outlined are invested with every element of a confidential position as thus defined, with the possible exception of involving the responsibility of the appointing officer or of the municipality. I am convinced that the performance of the duties of this position involves the responsibil-

ity of both. The commissioner of public works is given charge and control of the collection of the water revenue. Buffalo City Charter, § 271, subd. 1; also section 273, subd. 2. He "shall pay daily to the city treasurer all moneys received by him from any source, and make a report at the same time to the comptroller." Id. § 286. He shall file a bond, with sureties, in a sum to be fixed by ordinances, "conditioned for the faithful performance of the duties of his office, and for the accounting for and payment to the city of all moneys belonging to the city received by him." Id. § 48. By collusion with other subordinates in the office—e. g., the cashier—it is evident that the registrar could misappropriate the water revenues. Under the foregoing provisions of law, governing the duties of the commissioner relating to the water revenues and fixing the nature of the bond required of him, would not the commissioner be responsible to the city for such misappropriation?

In the case of Tillinghast v. Merrill, 151 N. Y. 135, 45 N. E. 375, 34 L. R. A. 678, 56 Am. St. Rep. 612, the Court of Appeals held a supervisor liable for public moneys which came into his hands, and which he in good faith and without negligence deposited in a bank, and which were lost by the failure of the bank. In discussing the question the court says:

"Without regard to decisions outside of our own jurisdiction, we think the weight of the argument, treating this as an original question, is in favor of the rule of strict liability, which requires a public official to assume all risks of loss, and imposes upon him the duty to account as a debtor for all funds in his custody."

Applying this strict rule of liability to the case in hand, I am of the opinion that the commissioner would be responsible. The other provision of the city charter (section 477), providing that each officer of the city shall be liable on his official bond for the general conduct of his deputy, does not, expressly or by implication, relieve the commissioner from liability for the misappropriation by his subordinates of the moneys with the collection of which the commissioner is charged by law, and for the faithful accounting for which and payment to the city he has given his official bond. The entire charge of the bureau, under the commissioner, devolves upon the registrar, in the absence or inability of the deputy. It must be entirely apparent that the negligent or unfaithful performance of the important duties thus liable to be cast upon the registrar would involve the responsibility of the municipality. The definition of a confidential position as above set out is fully satisfied, where the performance of the duties involve the responsibility either of the appointing officer or of the municipality.

In People ex rel. Crummey v. Palmer, 152 N. Y. 217, 46 N. E. 328, it was held that an assistant warrant clerk in the comptroller's office of the city of Brooklyn held a confidential position. His ordinary duties were merely clerical, but in the absence of the warrant clerk he was charged with the duty of making out warrants, and, after they were signed by the proper officer, of delivering the warrant so signed to the persons entitled thereto. It is true that the same court in the Chittenden Case observed that the Crummey Case was on the border line; but it is clear to my mind that the present relator's position is well within the border.

The defendants rely on the case of People ex rel. Tate v. Dalton, 41 App. Div. 458, 58 N. Y. Supp. 929; but that case is distinguishable in two respects, viz.: First, the court was considering the "strictly confidential" position excepted from the operation of the veterans' acts; and, second, the duties of the position did not involve either the personal responsibility of the appointing power or the responsibility of the municipality.

The conclusion being reached that the relator's position was improperly classified and is not subject to examination, the writ prayed for is granted.