(56 Misc. Rep. 29.)

PETERS v. ADAM et al. (two cases).

(Supreme Court, Special Term, Erie County. October 1, 1907.)

1. MUNICIPAL CORPORATIONS—CIVIL SERVICE—TRANSFER FROM EXEMPT TO COMPETITIVE CLASS.

Under Civil Service Law, Laws 1899, pp. 802, 805, c. 370, §§ 13, 15, and rule 26 of the Buffalo civil service commission, a transfer of a city employé from an exempt class to a competitive class *held* proper, though he did not stand highest on the eligible list.

2. SAME—CLASSIFICATION OF POSITIONS.

The position of chief clerk of the bureau of engineering of the city of Buffalo, being clearly a confidential one, and embracing among its duties those of secretary to the commissioner of public works and to the deputy engineering commissioner, belongs in the exempt class, and not in the competitive class.

Two applications by Edward D. Peters for mandamus—the first against Robert B. Adam and others, constituting the civil service commission of Buffalo, to compel certification of pay rolls; the second against the same defendants, and in addition James N. Adam, mayor of Buffalo, and Charles F. Milliken and others, constituting the state civil service commission. Writs allowed.

Simon Fleischmann, for applicant.
Louis E. Desbecker and Samuel F. Moran, for respondents.

WOODWARD, J.   The applicant, Edward D. Peters, chief clerk in the bureau of engineering, department of public works, of the city of Buffalo, brings two mandamus proceedings. The first is to compel the Buffalo civil service commission to certify certain of his pay rolls, which they have refused to certify, basing his claim upon the ground that he was lawfully transferred from the position of chief bookkeeper in the comptroller's office, in the exempt class, to that of chief clerk of the bureau of engineering, in the competitive class, and having passed the first competitive examination ever held for that position. The second proceeding is to compel the state and municipal civil service commissions to transfer the position of chief clerk from the competitive to the exempt class, upon the ground that said position is that

of a secretary, and also confidential, under the civil service law. These two proceedings may conveniently be considered together.

It appears from the moving papers that Mr. Peters, in 1895, was appointed statement and warrant clerk in the comptroller's office, at which time that position was not in the competitive class, to which it was later transferred while he held it. In January, 1904, he was promoted to chief bookkeeper in the comptroller's office, in the exempt class, at an increased salary. In January, 1906, he was transferred and appointed by the commissioner of public works to the position of chief clerk of the bureau of engineering, with the consent of the comptroller and at a slightly reduced salary. The position had for some time been in the competitive class; but no examination had ever been held for it, and no eligible list prepared until November, 1906, when Peters, who had taken the examination, was placed fourth on the eligible list of six. His services for the city have been continuous since he first entered the comptroller's office in 1895, and the duties of the prior positions which he held are, in the main, similar to those which he has been performing as chief clerk. The local commission has refused to certify the applicant's pay rolls since his appointment, in January, 1906, to the present time, except that they certified his pay rolls from the middle of July to about the middle of November, 1906.

I will first consider the claim of a valid transfer from the comptroller's office to the bureau of engineering. Section 13 of the civil service law (Laws 1899, p. 802, c. 370) provides that employment shall be given in positions in the competitive class "that are not filled by promotion, reinstatement, transfer or reduction" from those standing highest in competitive examinations, and, further, that no person shall be transferred to a position subject to competitive examination, unless he shall previously have passed a competitive examination equivalent to that required for such position, or unless he shall have served faithfully for three years in a similar position. Section 15 prohibits a transfer from a position in one class to one in another, unless authorized by the commission, and provides that no person shall be transferred to a position calling for different or higher tests than does the original position held by such person, unless he shall have passed the examination or attained a place on the eligible list for such higher position.

Pursuant to the state law, the Buffalo commission adopted a code of rules, of which rule 26 provides that transfers in the classified service can be made from one department to another, with the consent of the heads of the respective departments and of the civil service commission; that no person shall be transferred from a position in the exempt class to one in the competitive class, unless he has passed the competitive examination prescribed for the competitive position. It is reasonably clear that under the civil service law and rules persons in office who attain any place on an eligible list have a prior right to transfer to those seeking original appointment, although the latter may stand higher on the list, and that it is the intent and policy of the law to permit transfers, especially when not amounting to promotion from noncompetitive to competitive positions, at all events where the person so transferred passes the competitive examination and attains

any place on the eligible list for the new position. Collier on Civil Service, pp. 72, 73, footnote; Id. p. 101, note; Civil Service Law, §§ 13, 15; rule 26, Buffalo Civil Service Commission.

It appears that, at the time Peters was transferred from the position of chief bookkeeper in the comptroller's office to the position in question, the civil service commission had prepared no eligible list, and no such list had ever been in existence. It was, therefore, impossible for him to take the examination before the transfer. In July, 1906, the commission held an examination for the position, which Peters and another took; but the board, for some reason, did not prepare an eligible list, and held another examination in September, which Peters also took, and from which an eligible list was prepared, upon which Peters was fourth. This entire list was certified to the commissioner of public works by the civil service commission, with an official communication, stating that it now had an eligible list for the position from which to make a permanent appointment; and this, in spite of the fact that the usual custom and rule of the commission was to certify only the three highest names. The commissioner of public works thereupon continued Peters in office, fairly assuming that the commission thus recognized and authorized the transfer; and it seems to me that this was the reasonable construction of the commission's action, and quite likely its intention at the time. Assuming that the position was properly placed in the competitive class, I am of the opinion that Mr. Peters and the commissioner of public works complied with the requirements of the civil service law and of the rules of the local commission applicable to the transfer, within their fair intent, meaning, and spirit, and that the commission should approve such of his pay rolls as it has refused to certify.

Coming, now, to the question involved in the other proceeding, as to whether the position of chief clerk of the bureau of engineering should be transferred from the competitive to the exempt class, upon the ground that it is a confidential position for appointment to which a competitive examination is impracticable, or that of a secretary to an officer, board, or commission authorized to appoint a secretary, or both, it appears undisputed from the papers submitted that the position is one of great importance and responsibility, and that the commissioner of public works is responsible financially and morally for the faithful discharge of its duties. The bureau of engineering is one of the four great, separate bureaus or departments of the department of public works. Its chief clerk issues all orders for work or material; keeps the contract accounts, and prepares the orders for the payment of moneys, as well as the accounts of all work done by the city for which charges are made against individuals or corporations; collects moneys, aggregating from $50,000 to $100,000 per annum; prepares monthly reports of all work done by the bureau and audits all vouchers for such work; makes out all pay rolls for the bureau; prepares assessment rolls in connection with streets, sidewalks, and water, sewer, and gas connections; and keeps account of all the financial operations of the bureau. He also performs the duties of secretary both to the commissioner of public works and to the deputy engineering commissioner.

It further appears that in the bureau of water and in the bureau of streets, two of the other great bureaus of the department of public works, numerous similar positions are in the exempt class, some of them having been placed therein pursuant to writs of mandamus granted by the Supreme Court against the opposition of the local civil service commission; and I can perceive of no substantial distinction between some of those positions and that herein involved. See opinion in People ex rel. Coit v. Wheeler, 106 N. Y. Supp. 450. And it is singular that not a single position in the bureau of engineering, under its head, the deputy engineering commissioner, has been placed in the exempt class by the local commission. As a matter of law and principle, it seems to me that the position in question is clearly a confidential one, and that this bureau is entitled to one secretary, especially as Commissioner Ward states under oath, in the moving papers, that at least one secretary to the head of each of the four bureaus is absolutely necessary to enable the heads to perform their duties and to the proper conduct thereof.

I am aware that in the recent cases of People ex rel. Schau v. McWilliams, 185 N. Y. 92, 77 N. E. 785, and In re Dill, 185 N. Y. 106, 77 N. E. 789, the Court of Appeals, while holding that mandamus is the proper remedy to test the validity of the classification, also held that the courts will not interfere with a given classification, where it was fairly debatable. But the court also recognized the principle that it remained a question of law whether, in a case where the facts were undisputed and only one inference could reasonably be drawn as to the confidential character of the position, a question of law is presented for the determination of the courts. It seems to me that the proper classification of the position of chief clerk of the bureau of engineering, in view of its character and duties as disclosed by the motion papers, presents a question of law reviewable by the courts; and, after careful consideration, I have come to the conclusion that the position is improperly in the competitive class, and should be transferred to the exempt class.

An order may be entered in each proceeding in accordance with these views, with $50 costs to the applicant against the Buffalo civil service commission.