CLINT A. ALLEN, Appellee, v. LEO J. WEGMAN et al., Appellants.

No. 42254.

APRIL 4, 1934.

REHEARING DENIED OCTOBER 18, 1934.

Edward L. O'Connor, Attorney-general, and Clair E. Hamilton, Assistant Attorney-General, for appellant.

George A. Mahoney and H. W. Hanson, for appellee.

ANDERSON, J.—The plaintiff-appellee, Clint A. Allen, had been employed as bookkeeper in the state treasurer's office under different state treasurers for a period of about eleven years. On January 2, 1933, the defendant-appellant, Leo J. Wegman, succeeded Ray E. Johnson as treasurer of state. The appellee had been reappointed

to his position every two years during the time he was employed in the office. He was replaced by one William Schultes on January 2, 1933, but continued as an assistant, without any definite employment until on or about the 12th of January, 1933, when his services were discontinued by the said Leo J. Wegman. On February 8, 1933, the appellee commenced this action in the district court of Polk county, Iowa, alleging that he is a citizen of the United States and state of Iowa and residing in Polk county, Iowa; that he is a veteran and an honorably discharged soldier of the United States Army, and that as such is entitled to the preference under the provisions of chapter 60 of the 1931 Code of Iowa; that he was discharged from his employment as bookkeeper in the state treasurer's office of state of Iowa, on or about the 12th day of January, 1933, without just cause or excuse; that charges had been preferred against him by the treasurer of state, but that no hearing on said charges was ever had, although appellee had demanded such hearing, and he had also demanded that he be reinstated to his position as bookkeeper in the said office of state treasurer. The plaintiff further alleges that he has no plain, speedy, or adequate remedy at law, and prays for the issuance of a writ of certiorari commanding the defendant, Wegman, to certify to said court a transcript of the record and proceedings had with reference to the dismissal of the plaintiff from his position as bookkeeper in the treasurer's office, "together with all the facts relating to said matters", and asks that said proceedings be annulled and set aside, and that he have judgment for the salary of which he has been illegally deprived.

The writ was issued upon the foregoing petition, as prayed, directed to the defendant-appellant, commanding him to certify and return fully to the court, "a transcript of the records and proceedings and facts in this cause relating or appertaining to the discharge of this plaintiff."

The defendant-appellant filed a return to said writ alleging that he has neither knowledge nor information as to whether or not the plaintiff-appellee is an honorably discharged soldier of the United States, and specifically denies that the plaintiff is entitled to any preference under the provisions of chapter 60 of the 1931 Code; that shortly after the 12th of January, 1933, the plaintiff demanded a hearing under the Soldier's Preference Law, and, in order to comply with such demand, the defendant filed charges under section 1163 of the 1931 Code. A copy of the charges so filed was

attached to the return and alleged that the plaintiff, Allen, by reason of his inattention to the duties of his office, was incompetent to handle the business of said office and was guilty of misconduct. The defendant-appellant further stated in his return that no hearing was had upon the charges thus filed for the reason that the said plaintiff-appellee was not entitled thereto, and that he is within the exceptions specified in section 1165 of the 1931 Code. The defendant further alleges, in his return, that the discharge of the plaintiff was not malicious and that it was upon good cause and for a good excuse, and that the charges made against the plaintiff were true, and that the plaintiff was incompetent and also guilty of misconduct.

The defendant further states that the position of head bookkeeper in the office of the treasurer of the state of Iowa is one which is classed as a strictly confidential relation to the appointing officer, and for that reason the Soldier's Preference Law does not apply to the said position.

The defendant further states that he desires upon the submission of the case to present evidence in support of the statements contained in the return to the writ, and asks that the writ be annulled.

The plaintiff moved to strike certain portions of the foregoing return to the writ, but this motion was not ruled upon by the court, and the plaintiff filed a general denial to the return.

The cause proceeded to trial before the court, and evidence was introduced upon the issues presented by the plaintiff's petition and the defendant's return to the writ of certiorari. It appears that the plaintiff was first employed as bookkeeper in the office of. the state treasurer in January, 1922, and continued to hold that position until on or about January 2, 1933; that the plaintiff was an honorably discharged soldier of the United States Army. It appears that it was a part of the appellee's duties to post in a loose-leaf ledger some three hundred accounts, including all of the various department and trust funds of the state; that in doing this he posted from the warrant redeemed register, and also from the journal. The register and journal were kept by other employees, but were under the supervision of the plaintiff. It also appears that the plaintiff was in general charge of the bookkeeping department of the treasurer's office, and that, if the treasurer wanted to know the balance in any particular fund on any particular day, he would have to call upon the plaintiff for such balance, that it would be impossible for the

treasurer himself to perform all of the duties connected with his office, including that of bookkeeping, and that it was necessary that that part of the work be delegated by the treasurer to a head bookkeeper and other assistants. The position of head bookkeeper was one which called for a man of integrity and trust and who could be depended upon as to his competency and as to his conduct of the office. The head bookkeeper is the only place or department in the office of the state treasurer where down to the minute information could be obtained concerning any of the state accounts; and that any misconduct or inattention to the duties of the position of head bookkeeper would reflect on the position of the treasurer of state. There is no testimony in the record as to the competency of the plaintiff, other than the fact that he was retained therein for approximately eleven years. There is evidence, however, that his competency and conduct in the office had been questioned and complained of by the state treasurer immediately preceding the defendant, Wegman. There is direct testimony from other employees in the office that the plaintiff on many occasions and over a considerable period of time during the latter years of his employment allowed his work to accumulate and become delinquent for periods of time ranging from one week to two months, and that during such times it would be practically impossible for the state treasurer or any one else to obtain up-to-date and accurate information as to the condition of any of the various funds of the state. It is significant that this testimony was produced from employees of the office who had worked with the plaintiff for from five to eleven years. We have such testimony from R. M. Williams, who had been deputy treasurer for a five-year period, E. L. Brown, who had been cashier for five years, Rebecca Lipson, who classified the warrants for the various funds when they first came into the office, and who had been so employed for five years, Mrs. Ella Ulrich, who was warrant clerk and kept the warrant register and posted the register before it was handed to the head bookkeeper, and who had been employed in that capacity for twelve years, Cecelia McGrevy, who was bonus clerk and took care of the state's sinking fund and also took the treasurer's dictation, and who had been employed for a period of six years, Ellen Lathrop, who was employed in the office with the plaintiff for a period of six years. It is true all of these employees were retained in the office by Mr. Wegman, and were employed by him at the time their testimony was offered in the trial of this case,

but such fact should not detract from the weight of their testimony. On the other hand, should the plaintiff be reinstated to his position, he would necessarily be in the atmosphere created by their adverse testimony. These witnesses all testified that the plaintiff was very inattentive to the duties of his office, and that he absented himself from the office approximately one-third of the time during each day, without any cause, reason, or excuse therefor, and that his books were always from two weeks to two months behind. Mr. Wegman, the defendant, testified that at the time he went into the office on December 20, 1932, the books of Mr. Allen were in arrears two months, and that they were not brought up to date until about the 12th of January, 1933, and that he kept Mr. Allen in the office up to that time in order to get the books posted up to date. Wegman also testified that, when he found out about December 20, 1932, that Mr. Allen's books were two months behind, he asked Mr. Johnson, the outgoing treasurer, what the excuse was for that condition, and that Mr. Johnson answered, "Well, Allen was chasing around through the corridors of the building or visiting in other departments, instead of doing his work." I said, "Mr. Johnson, could you see that?" He says, "You don't think I couldn't see, do you?" I says, "What corrective measurers were applied?" He says, "Mr. Wegman, I just couldn't do a thing with him." This testimony was corroborated by the witness R. M. Williams, who was deputy in the treasurer's office, and who testified that he was present at the time Mr. Johnson made the statement attributed to him by Mr. Wegman, and he further testified that, when Mr. Johnson took over the office of state treasurer from Mr. Burbank, Allen was behind with his work and he had continued to be in arrears ever since. Mr. Johnson testified that he had no remembrance of such conversation, but that he would not say it did not occur. Going a little further into the details of the testimony along this line: The witness Cecelia McGrevy testified that many times while Mr. Johnson was state treasurer he would ask about Mr. Allen's books, and they would not be up to date. The dictation that this witness took from Mr. Johnson would sometimes have reference to the particular funds covered by the books kept by Mr. Allen, and Mr. Johnson would ask for a balance as of a certain date, but the books would not be up to date and he could not give the exact balance. Another witness, Mrs. Ella Ulrich, testified that "He (Allen) did not keep the books posted up to date. They were not usually up to date. I had occasion

to examine the books most every day. I know when Mr. Burbank (former treasurer) was there they were back and they had an extra man come in and bring them up. I know he was out of the office a considerable part of the time." Ellen Lathrop, another employee of the office, testified that she knew that Allen was behind in his work quite often and that she noticed he was out of the office quite a little of the time. "It was a general habit of his to be gone a part of each day." Rebecca Lipson, another employee of the office, testified: "Mr. Allen was out of the office a great deal of the time. He was out a great deal most every day." E. L. Brown, cashier in the office testified: "I have observed Mr. Allen's actions in the treasurer's office during the past four or five years especially relative to the amount of time that he was out of the office. He would leave most any time. Very frequently. Most every day. When he left he would be out for a considerable time. I know that his books were in arrears a great deal of the time during the past two or three years. When Allen's books were in arrears, it was impossible to ascertain the exact cash balance on hand in any particular fund without checking up all the warrants that hadn't been posted. The work did not become heavier near the end of the year." R. M. Williams, a deputy state treasurer, testified: "I observed the books and the work being done in the office of the Treasurer of State on numerous occasions during the past years. Mr. Allen's books were about six weeks behind on December 20, 1932. He was posting the work for the date of November 2nd. I have examined the books numerous times during the past three or four years for the purpose of ascertaining whether or not Mr. Allen was behind in his book work. They were never up to date. I know he (Allen) spent considerable time out of the office. I would say he was out of the office at least a third of the time. His duties did not take him out of the office." There is also testimony in the record to the effect that Mr. Schultes, who succeeded Mr. Allen as head bookkeeper, kept the books posted every day, and they were always up to date. He also testified that the head bookkeeper had supervision over the other bookkeepers and clerks in the office to see that they kept their work up in taking care of the warrants, etc.

There is no substantial testimony in the record controverting the testimony we have quoted and referred to. The trial court made a finding that the plaintiff was competent, and that he was not guilty of misconduct, but seems to have based such finding, to a

considerable extent, if not wholly, upon the fact that Mr. Allen had held the position without question for a period of more than eleven years. And the trial court expressed himself during the making of the record that he would pay more attention to this fact than he would to the testimony showing incompetency and misconduct. We think that the trial court's finding in this respect is wholly without support in the record, and that the uncontroverted testimony clearly shows that the plaintiff was guilty of misconduct in absenting himself from the office, and in his failure to perform his work timely and promptly, to such an extent as to show that he was incompetent to longer continue in the position.

It is true that no hearing was had before Mr. Allen's dismissal upon the charges of incompetency and misconduct made against him, but both parties joined issue upon this question and submitted it to the trial court for its determination, and after a full hearing the trial court determined the issue in favor of the plaintiff, as we have indicated. The parties thus have consented to a submission and determination of the question by the trial court, and we are treating the question on this appeal as one for our determination.

Some question is raised by the defendant that the term of office of Mr. Allen expired on January 2, 1933, and that he at that time necessarily became an applicant for the position and entitled to the appointment over other applicants of no greater qualifications, and, upon the treasurer's refusal to allow him a preference under the Soldier's Preference Law, his remedy was by mandamus. The appellee on the other hand contends that he was holding the position by appointment which did not expire with the termination of the appointing officer's term of office, and that he could not be removed except for incompetency or misconduct shown after a hearing. We do not find it necessary to determine the questions thus raised. Having raised the question as to the misconduct and incompetency of the plaintiff in the certiorari proceeding and having submitted it to the trial court for determination, the parties are bound by the final determination of such questions in this proceeding.

We have held that the provision in the Soldier's Preference Law providing for the issuance of a writ of certiorari to review the discharge of a person within that law, construed with the general statutes on certiorari, has so enlarged the office of the writ as to permit a review of the testimony relative to such discharge. Butin v. Civil Service Commission, 179 Iowa 1048, 162 N. W. 565. We

also held in that case that, if as to a discharge, mandamus is available, it is an alternative remedy. We further held in that case that section 12464 permits oral evidence to be introduced on the hearing upon certiorari and we there said:

"We think it must have been the purpose to enlarge the scope of the review to the extent of determining whether the discharge was justified on the merits. The context and the manifest object of the statute lead irresistibly to this conclusion. * * * We are of opinion that the right to review by certiorari given in the Soldier's Preference Act was intended to permit the reviewing court to consider *anything* which legitimately bore on whether the discharge was for any reason wrongful; that the legislature had power to enlarge the scope of review on certiorari; and that by the special provision aforesaid it authorized the reviewing tribunal to pass upon whether the evidence justified the discharge."

It follows, with this enlarged scope of the review to test the rightfulness of the discharge under the act, it is not, as in ordinary cases of certiorari, limited to evidence on the question of jurisdiction or other illegality, but provides for a consideration of anything which legitimately bears on the question as to whether the discharge was for any reason wrongful.

We also held in Douglas v. City of Des Moines, 206 Iowa 144, 220 N. W. 72, that on certiorari to review the action of a municipality in declining to continue the employment of an ex-soldier evidence in addition to the return may be received.

Boyer v. Mayor, 113 N. W. 474, we held that the appointing official responsible, directly or indirectly, to the people for the proper performance of the duties to be performed by the appointee, must exercise his own discretion and judgment in determining the qualifications of the applicants, and that in all cases that discretion should not be interfered with by the courts except in cases of clear abuse. To the same effect, see Ross v. City, 136 Iowa 125, 113 N. W. 474.

The appellant also contends that the position of bookkeeper or head bookkeeper in the state treasurer's office is one involving a strictly confidential relation to the appointing officer and within the exceptions mentioned in section 1165 of the 1931 Code. The trial court held against this contention. The trial court held that the duties performed by the head bookkeeper were not to be

performed in secret and were not confidential, that the records which were to be kept by this bookkeeper were public records and were open to public inspection at any time, and that by reason of these facts the plaintiff's position did not fall within the exceptions provided by the statute. With this finding of the trial court we are unable to agree. The trial court seemed to have the opinion that the question of confidential relationship involves two essentials, secrecy and trust. And in support of the trial court's holding the appellee cites only New York cases. We find that the New York cases do not support the finding and determination of the trial court on this issue, but do support a contrary view. The New York Soldier's Preference Statute is practically in the same language as the Iowa statute, and, in determining what positions were confidential under that statute, the New York court in the case of People v. Lyman, 157 N. Y. 368, 52 N. E. 132, said:

"The statute which we have under consideration has reference to officials, and the confidential relations mentioned undoubtedly have reference to official acts, and include not only those that are secret, but those that involve trust and confidence which are personal to the appointing officer. If, therefore, the statute casts upon an officer a duty involving skill or integrity, and a liability either personal or on the part of the municipality which he represents, and he intrusts the discharge of this duty to another, their relations become confidential."

The cited case involved a special agent in the excise department, and the court there held that the position was a confidential one, and that the relator was not entitled to be appointed or retained in the position.

In People v. Palmer, 152 N. Y. 217, 46 N. E. 328, the court had under consideration the New York Soldier's Preference Law and in defining "confidential relation" held that such a relation arises whenever a continuous trust is reposed by one person in the skill and integrity of another, that "the confidential relations mentioned undoubtedly have reference to official acts, and include not only those that are secret, but those that involve trust and confidence which are personal to the appointing officer. If, therefore, the statute casts upon an officer a duty involving skill or integrity, and a liability either personal or on the part of the municipality which he represents, and he intrusts the discharge of this duty to another,

their relations become confidential." The court in that case further said that, where the duties of the appointing officer were of such a character that it is impossible for him to personally discharge them, and of necessity he was compelled to intrust the performance of them largely to others, a confidential relation arose between the officer and the others to whom a portion of his duties was necessarily delegated. The duties of the applicant in that case consisted in taking care of the bills and vouchers as they came in, filing them away, and getting them out and exhibiting them when called for, and seeing that the papers and boxes were kept in their places. The court proceeds to say, "It will thus be seen that the greater portion of the duties devolving upon the relator's position involved skill and integrity, and, if the duties were carelessly or negligently performed, it might result in great loss either to the comptroller or the city." And the court held that the position was one requiring trust and confidence, and that it was, under the statute, a confidential relation to the appointing officer. See, also, In re Ostrander, 12 Misc. 476, 34 N. Y. S. 295; 146 N. Y. 404, 42 N. E. 543.

In Chittenden v. Wurster, 152 N. Y. 345, 46 N. E. 857, 37 L. R. A. 809, the New York court reaffirmed its pronouncements in the case of People v. Palmer, supra, and said that it considered the Palmer case on the border line, but said:

"We then were of the opinion that where the duties of the position were not merely clerical, and were such as especially devolved upon the head of the office, which, by reason of his numerous duties, he was compelled to delegate to others, the performance of which required skill, judgment, trust, and confidence, and involved the responsibility of the officer or the municipality which he represents, the position should be treated as confidential. We have not changed our views upon the subject."

In re Ostrander, supra, a deputy superintendent of public buildings was held to be a strictly confidential position.

In Scott v. Brown, 90 Ind. App. 367, 157 N. E. 64, it was said:

"The term 'confidential relation' is a very broad one and is not at all confined to any specific association of the parties, but applies generally to all persons who are associated by any relation of trust and confidence."

Under the foregoing cited cases and quoted pronouncements

and definitions, we are constrained to hold that the position from which the appellee, Allen, was discharged was a confidential one and within the exceptions of section 1165 of the Code. To him was delegated the performance of work and duties which devolved upon the state treasurer to perform and which he necessarily had to delegate to his head bookkeeper. The treasurer was directly responsible for the competent, efficient, prompt, and honest performance of the duties so delegated. We think the position from which the appellee was discharged involved strictly confidential relations with the head of the office, and that the district court erred in holding that the position was not one of confidential relation and within the exception mentioned in the statute. It follows from the foregoing discussion that the finding and rulings of the trial court must be, and they are hereby, reversed. Reversed and remanded, with instructions to enter an order annulling the writ.—Reversed and remanded.

DONEGAN, KINDIG, KINTZINGER, and MITCHELL, JJ., concur.

CLAUSSEN, C. J., and ALBERT and EVANS, JJ., specially concur in the result.

STEVENS, J., dissents.

CLAUSSEN, C. J. (specially concurring)—I am unable to agree with the majority of the court in holding that the position held by appellee was confidential in the sense required by the statute to warrant appellee's discharge. I feel that to so hold unduly limits the operation of the preference law as enacted by the legislature. The facts set forth in Mr. Justice ANDERSON's opinion are such that the judgment of the trial court should be reversed. Consequently I concur in the reversal. I am authorized to say that Mr. Justice ALBERT concurs in these views.

EVANS, J. (specially concurring)—I concur in the result. I do so because in my judgment, the plaintiff has erred in assuming that the Soldier's Preference Law applies to the case. In bringing certiorari proceedings, the plaintiff assumes that he is the present incumbent. I think his tenure of office ended automatically with the tenure of his appointing principal. He is not defending an ouster.

I do not think that plaintiff is incompetent. I think that the finding to that effect is unwarranted on the record and that it does a grave injustice to the plaintiff. The finding is made upon grossly incompetent evidence.

STEVENS, J. (dissenting)—In so far as the foregoing opinion of the majority holds that the position of bookkeeper in the office of the treasurer of state is confidential in character I do not agree. In my opinion it partakes in no degree of such relationship. On the remaining questions discussed I express no opinion.